**RAILROAD COMMISSION OF TEXAS, Appellant,**

v.

**HIGH PLAINS NATURAL GAS COMPANY, Appellee.**

**No. 13156.**

Court of Civil Appeals of Texas, Austin.

Feb. 18, 1981.

Rehearing Denied March 25, 1981.

Mark White, Atty. Gen., J. Scott Wilson, Asst. Atty. Gen., Austin, for appellant.

Barry Bishop, Clark, Thomas, Winters & Shapiro, Austin, for appellee.

SHANNON, Justice.

The Railroad Commission of Texas has appealed from the judgment of the district court of Travis County setting aside the orders of the Commission in Gas Utilities Dockets 1230 and 1650 which related to rates for gas service supplied by High Plains Natural Gas Company to several towns and communities in the northeastern Panhandle. Appellee is High Plains Natural Gas Company.

The Commission complains of the judgment by six points of error. The important points, however, are: (a) the district court erred in concluding that the Commission's failure to permit recovery by the gas company of certain gas costs was arbitrary and capricious and in violation of statutory provision; and (b) the district court erred in concluding that the 90 percent purchased gas adjustment clause is arbitrary and capricious, not supported by substantial evidence, and in violation of statutory provisions.

Upon agreement of the parties, the district court consolidated the administrative appeal in Docket 1230 with that in Docket 1650. In Docket 1230, High Plains had sought from the Commission both a modification of its purchased gas adjustment clause (PGA) established in a prior docket and a recovery of gas costs lost as a result of the operation of that PGA clause. The requested modification resulted from large increases in the cost of natural gas charged the company by its suppliers. The Commis-

sion granted the PGA clause modification but refused to permit recovery of prior unrecovered gas costs. The gas company in Docket 1650 applied to the Commission for, among other things, relief from the operation of its 90 percent PGA clause and also to recover revenue lost through the operation of that clause. The Commission denied the gas company's application for a 100 percent PGA clause as well as its request for an opportunity to recover revenue lost through the operation of the 90 percent PGA clause.

The purchased gas adjustment clause is an automatic escalator mechanism devised by utility regulators to deal with rapid fluctuations in the cost of natural gas. Such a clause operates to increase or decrease the revenue of the gas company by exactly the amount of its increased or decreased costs of gas charged the gas company by its suppliers. *City of Norfolk v. Virginia Elect. & Power Co.*, 197 Va. 505, 90 S.E.2d 140 (1955). In case of a 100 percent PGA clause, the consumers of gas are required ultimately to pay the total increase in the cost of gas, if an increase occurs, and they are given the benefit of a total decrease in such cost when a decrease comes about. Such clauses allow adjustment in the revenue of the utility in case of fluctuations of the cost of gas without the necessity for a full scale rate hearing each time the cost of gas increases or decreases.

■ The allowance of a purchased gas adjustment clause as an administrative practice has long been permitted. *City of Chicago v. Illinois Commerce Commission*, 13 Ill.2d 607, 150 N.E.2d 776 (1958). Such clauses are in common use and have been judicially recognized and approved in Texas. *San Antonio Ind. S. D. v. City of San Antonio*, 550 S.W.2d 262 (Tex.1976); *Railroad Comm'n of Texas v. City of Fort Worth*, 576 S.W.2d 899 (Tex.Civ.App.1979, writ ref'd n. r. e.).

The losses to the gas company in this appeal stem from the fact that the Commission denied the company a 100 percent PGA clause, and allowed only a 90 percent clause. The gas company, under such arrangement, can pass along to its customers only 90 percent of the increased cost of gas and must absorb the resulting 10 percent balance.

■ A utility is entitled, among other things, to sufficient revenue to recover proper operating expenses. That recovery, however, is not without limitation. To be allowed as a part of the cost of service, operating expenses must be limited to the reasonable costs of efficient operation. Garfield and Lovejoy, Public Utility Economics 45 (1964); *Reno Power, Light & Water Co. v. Nevada Public Service Commission*, 298 F. 790 (1923). These concepts were codified in the Public Utility Regulatory Act, art. 1446c § 39 which provides that the regulatory authority shall fix the overall revenue of a utility at such level to permit such utility to recover its operating expenses.

■ The cost of purchased gas constitutes the greatest single component of the gas company's cost of service, and the Commission has the duty to fix the company's overall revenue at a level to permit it to recover the cost of such purchases.

The Commission advances two justifications in defense of its refusal of the 100 percent PGA clause: (1) since the Commission can refuse to allow any PGA clause at all, the gas company cannot complain of one allowing a 90 percent flow-through of increased gas costs; and (2) a PGA clause with less than a 100 percent flow-through of increased gas costs will "induce the company to purchase the lowest priced gas available."

■ With respect to the Commission's first justification, it is true that the Commission is not required to employ PGA clauses. Nevertheless, "While the Commission is not bound as a matter of law to approve such a [PGA] clause, allowance in some form must be made for increase in fuel costs shown to be inevitable." *Public Service Co. of New Hampshire v. State*, 113 N.H. 497, 311 A.2d 513 (1973). The point is that the Commission is free to devise whatever mechanism it deems appropriate to

achieve the end that the company have an opportunity to recoup its gas costs. However, should the Commission choose to use a PGA clause, then the gas company is entitled to one that allows it to recover its gas purchase costs. Art. 1446c, § 39.

■ The Commission's second justification is not supported by substantial evidence. The evidence is that High Plains is a small company that must, in order to supply its customers' needs, struggle to buy gas at whatever price it can. There is no evidence that cheaper gas was available to High Plains. Therefore, it cannot be presumed that the 90 percent flow-through of increased gas costs will operate to "induce the company to purchase the lowest priced gas available."

■ The Commission's brief contains the unusual statement that one of the purposes of the PGA clause imposed upon High Plains is to make the gas company "bear a portion of the increased costs." Section 39, however, does *not* contemplate that the utility will "bear a portion of the increased costs," but instead affirmatively provides that the utility will "recover its operating expenses." The 90 percent PGA clause imposed upon High Plains does not permit such recovery, and the district court did not err in setting aside the Commission's order imposing it.

■ With respect to the unrecovered gas costs, it is plain that such costs were incurred by the company and the purchase of the more expensive gas was reasonable and necessary in order for the company to serve its customers. Pursuant to the mandate of § 39, the Commission is bound to permit the gas company to recoup, in some form, the unrecovered gas costs.

The Commission's remaining points of error complain of the balance of the conclusions by the district court stating other grounds in support of its judgment setting aside the agency order. Because this Court has determined that the judgment setting aside the order should be affirmed upon grounds set forth in the opinion, it is unnecessary to treat the Commission's remaining points of error.

The judgment setting aside the orders of the Commission is affirmed.

Affirmed.

POWERS, J., not sitting.