**SOUTHERN UNION GAS COMPANY, Appellant,**

v.

**RAILROAD COMMISSION OF TEXAS, Appellee.**

No. 14287.

Court of Appeals of Texas, Austin.

May 15, 1985.

Rehearing Denied June 19, 1985.

138

Mr. Robert B. Rice, Robert A. Rima, K. Renee Mauzy, Austin, for appellant.

Honorable Jim Mattox, Atty. Gen., Jo Campbell, Asst. Atty. Gen., Austin, for appellee.

Before SHANNON, C.J., and EARL W. SMITH and BRADY, JJ.

SHANNON, Chief Justice.

Appellant Southern Union Gas Company filed an administrative appeal in the district court of Travis County from an order of the Railroad Commission in Gas Utilities Docket No. 667. The Commission's order set rates for natural gas service for the cities and towns of Monahans, Thorntonville, Wickett, Wink, Barstow, Pecos City, and Pyote. After hearing, the district court rendered judgment affirming the agency order. This Court will affirm the judgment of the district court.

 The gas company seeks to overturn the district court judgment by several points of error supported by a lengthy brief. The company focuses its attack upon the district court's affirmance of the Commission's allowance of an eighty-five percent purchase gas adjustment clause (PGA). The gas company insists that the Commission should have permitted a one hundred percent recovery of the increase in the costs of gas purchased. The purchase gas adjustment clause is an automatic escalator mechanism devised by utility regulators to deal with rapid fluctuations in the cost of natural gas. Such clause operates to increase or decrease the revenue of a gas company by the amount of the increased or decreased costs of gas charged the gas company by its suppliers. *City of Norfolk v. Virginia Elect. & Power Co.*, 197 Va. 505, 90 S.E.2d 140 (1955). In case of a one hundred percent PGA clause, the consumers of gas are required, under certain conditions, to pay the total increase in the cost of gas, if an increase occurs, and they are given the benefit of a total decrease in such cost when a decrease comes about. Such clauses allow adjustment in the revenue of the utility in case of fluctuations of the cost of gas without the necessity for a full scale rate hearing each time the cost of gas increases or decreases.

The allowance of a purchase gas adjustment clause as an administrative practice has long been permitted. *City of Chicago v. Illinois Commerce Commission*, 13 Ill.2d 607, 150 N.E.2d 776 (1958). Such clauses are in common use and have been judicially recognized and approved in Texas. *San Antonio Ind. S.D. v. City of San Antonio*, 550 S.W.2d 262 (Tex.1976); *Railroad Comm'n of Texas v. City of Fort Worth*, 576 S.W.2d 899 (Tex.Civ.App.1979, writ ref'd n.r.e.); *Railroad Comm'n of Texas v. High Plains Natural Gas Co.*, 613 S.W.2d 46 (Tex.Civ.App.1981), aff'd, 628 S.W.2d 753 (Tex.1981).

Under the PGA clause allowed by the Commission in this proceeding, the gas company may pass along to its customers only eighty-five percent of the increased cost of gas and must absorb the resulting fifteen percent balance.

 It is true that a utility is entitled, among other things, to sufficient revenue to recover proper operating expenses. That recovery, however, is not without limitation. To be allowed as a part of the cost of service, operating expenses must be limited to the reasonable costs of efficient operation. Garfield & Lovejoy, Public Utility Economics, 45 (1964); *Reno Power, Light & Water Co. v. Nevada Public Service Commission*, 298 Fed. 790 (1923). The purpose of a PGA clause permitting less than one hundred percent recovery of purchased gas costs is to induce the gas company to seek lower priced gas when a competitive market exists. *Railroad Comm'n of Texas v. High Plains Natural Gas Co., supra.* These concepts were codified in the Public Utility Regulatory Act, Tex.Rev.Civ.Stat.Ann. art. 1446c § 39, which provides that the regulatory authority shall fix the overall revenue of a utility

at such level to permit such utility to recover its operating expenses.

■ The cost of purchased gas constitutes, of course, the greatest single component of a gas company's cost of service. Provided the company demonstrates its entitlement, the Commission has the duty to fix the gas company's overall revenue at a level to permit it to recover the cost of such purchases. *Railroad Comm'n of Texas v. High Plains Natural Gas Co., supra.*

■ Unlike the record in *Railroad Comm'n of Texas v. High Plains Natural Gas Co., supra,* the proof in this record demonstrates that Southern Union purchased gas in a competitive market. Accordingly, the Commission was empowered, under these circumstances, to fix the PGA clause at less than one hundred percent in an effort to induce the company to seek the purchase of lower priced gas. *Railroad Comm'n of Texas v. High Plains Natural Gas Co., supra.*

■ Southern Union also argues under these points that a percentage change in the PGA clause was not at issue before the Commission. All that it sought, suggests the company, was the authority to adjust its gas costs on a quarterly basis instead of on an annual basis and not a change in the percentage recovery of the increased cost of gas purchases. (Before the time of the agency proceeding, the gas company had enjoyed a one hundred percent PGA clause). This Court is in agreement with the Commission's response that once the matter of the PGA clause was placed in issue, the agency was authorized to consider the proposed PGA clause in its entirety.

■ By point of error three, Southern Union complains that the district court erred in affirming the Commission's order fixing the effective date of the purchase gas adjustment clause. The company waived the claimed error since it did not assert such contention in its motion for rehearing. *City of El Paso v. Public Utility Comm'n of Texas,* 609 S.W.2d 574 (Tex. Civ.App.1980, writ ref'd n.r.e.); *United Savings Ass'n of Texas v. Vandygriff,* 594 S.W.2d 163 (Tex.Civ.App.1980, writ ref'd n.r.e.).

■ By several points of error the gas company asserts that the district court erred in affirming the agency's order setting a 5.25 percent rate of return. The Commission concluded in its order that the 5.25 percent rate of return would produce sufficient net income to allow payment of long-term debt and preferred stockholder dividends while permitting payment of slightly more than a thirteen percent yield on common stock. Southern Union makes the threshold argument, under these points, that the agency order is faulty because it does not contain findings of fact as mandated by Tex.Rev.Civ.Stat.Ann. art. 6252–13a § 16(b) (Supp.1985). Accordingly, insists the gas company, the judgment must be reversed and the administrative order be remanded to the Commission. Further elaboration of this contention is unnecessary in that the gas company did not complain of the absence of findings of fact in its motion for rehearing, thereby waiving the claimed error. *City of El Paso v. Public Utility Comm'n of Texas, supra.*

■ In the beginning discussion of these points, Southern Union also advances the near fatuous thesis that it was entitled to an eight percent rate of return instead of the 5.25 percent rate because the larger percentage was the rate of return allowed it by the Commission in previous rate proceedings. Whatever rate of return the Commission may have allowed Southern Union in some other docketed rate proceeding has no bearing upon the rate to which the company was entitled in the present hearing. The burden was on the gas company, in this hearing as in any other wherein the rate of return is contested, to offer proof in support of its proposed rate.

■ Before turning to the proof bearing on rate of return, some mention should be made concerning that economic concept. The rate of return is the sum of money that a utility is allowed an opportunity to earn, over and above operating expenses, depreciation, and taxes. The rate

of return is expressed as a percentage of the utility's rate base. Butler, *The Rate of Return in Texas—The Neglected Issue,* 28 Baylor L.Rev. 937, 938 (1976).

The rate of return, of course, is not specified in Tex.Rev.Civ.Stat.Ann. art. 1446c as any exact percentage. Rather, two back-to-back sections of the act, § 39 and § 40(a), provide that the rate of return shall consist of at least a reasonable return on invested capital, but not more than a fair return on the adjusted value of invested capital.

To achieve the rate of return that a utility should be allowed to earn, the regulatory agency considers the cost to the utility of its capital expressed as (1) interest on long-term debt; (2) dividends on preferred stock; and (3) earnings on common stock. Each of the elements of the capital structure of the utility is given a weighting based upon the company's capital structure to arrive at a composite rate of return. The composite rate of return is then applied to the utility's rate base to arrive at the proper amount of return. Garfield & Lovejoy, Public Utility Economics, 116 (1964).

In calculating the rate of return, the costs of long-term debt capital and preferred stock capital may be ascertained with relative ease. The cost of debt capital is the interest rate contractually agreed upon by the investor and the utility. Likewise, the cost of preferred stock is the dividend percentage agreed upon by the utility and the investor. Both such costs are pre-determined contractually and, accordingly, do not fluctuate. The cost of common stock capital, however, is more controversial because with common stock, there is no contractual interest rate or fixed-dividend rate. The determination of cost of common stock capital is a matter of judgment subject to varying expert opinion. *Railroad Comm'n of Texas v. Lone Star Gas Co.,* 599 S.W.2d 659 (Tex.Civ.App.1980, writ ref'd n.r.e.).

Several methods are used currently by rate of return experts to estimate the cost of common stock capital. Two methods are: (1) comparable rates of earnings of other companies and (2) the past price earnings ratio of the utility's common stock. *Railroad Comm'n v. Lone Star Gas Co., supra.*

The Commission's order is supported by the testimony of the consulting economist, Dr. Jack Hopper, who was sponsored by the towns and cities. Hopper testified from his study of comparable rates of earnings of other companies. Based upon his study, Hopper opined that Southern Union should be allowed a rate of return which would permit a return on common stock between 11.5 percent to 12.5 percent. Employing the towns' and cities' rate computation, which was less than that of the gas company, Hopper opined that a 7.1 percent rate of return was appropriate.

The Commission adopted the towns' and cities' methodology to calculate the rate of return, but employed the rate base figure sponsored by the gas company rather than that of the towns and cities. Accordingly, the Commission concluded that the 5.25 percent return to the rate base would permit the gas company to earn sufficient income to allow something over thirteen percent return on common stock.

Southern Union attacks Hopper's opinions as being "bald" conclusions and his study as being a "mish-mash" of figures. As such, the gas company suggests that Hopper's evidence is not worthy of belief. Since Hopper's testimony is not credible, the gas company then concludes that the agency order is not supported by substantial evidence.

Southern Union's argument turns a blind eye toward the established premise that an agency may, or may not, accept the testimony of witnesses, expert or non-expert. *Railroad Comm'n of Texas v. Lone Star Gas Co.,* 618 S.W.2d 121 (Tex.Civ.App.1981, no writ); *City of Frisco v. Texas Water Rights Comm'n,* 579 S.W.2d 66, 69 (Tex.Civ.App.1979, writ ref'd n.r.e.). Likewise, the agency is the judge of the weight to be accorded the witnesses' testimony. Moreover, the agency may ac-

cept part of the testimony of one witness and disregard the remainder.

 From an examination of the finding of the hearing officer and the Commission's order, it appears that the Commission chose to accept, in part, Hopper's testimony. And as was its right, the agency rejected Hopper's evidence concerning the gas company's rate base and accepted the evidence sponsored by the gas company. The points of error are overruled.

Southern Union has other points of error which this Court has examined and, after consideration, has concluded that those complaints are without merit.

The judgment is affirmed.