# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00249-CV

**Entergy Gulf States, Inc., Appellant**

**v.**

**Public Utility Commission of Texas, Texas Industrial Energy Consumers, City of Beaumont, City of Bridge City, City of Conroe, City of Groves, City of Nederland, and City of Port Neches, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT NO. 98-08017, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING**

## O P I N I O N

Appellant Entergy Gulf States, Inc. ("Entergy") appeals from a district-court judgment affirming a final order of appellee the Public Utility Commission of Texas (the "Commission").[1] Entergy sought a rate increase to recover additional sums from its share in the construction of the River Bend Nuclear Generating Station in St. Francisville, Louisiana ("River Bend"). The Commission denied Entergy's request, finding that Entergy failed to present a *prima facie* case that

---

[1] Entergy Gulf States, Inc. was known as Gulf States Utilities at the time this controversy arose in 1986 and in several of the succeeding years of this litigation. Entergy Gulf States came into being after Gulf States's 1993 merger with Entergy Corporation, a public utility holding company. We will refer to appellant as Entergy throughout the dispute's entire history.

the additional cost of the plant's construction above the adjusted definitive cost estimate ("DCE") was prudent.[2] Appellees Texas Industrial Energy Consumers and the cities of Beaumont, Bridge City, Conroe, Groves, Nederland, and Port Neches support the Commission's decision denying the rate increase. We will affirm.

## STATEMENT OF THE FACTS AND PROCEDURAL HISTORY

Construction of River Bend began in 1977. After suspending construction from October 1977 to February 1979, construction resumed and the plant achieved operational status in 1986. At that time, River Bend began serving customers in Southeast Texas and South Central Louisiana. River Bend's construction cost approximately $4.5 billion, well above the original cost estimate. As a partner in the project, Entergy was responsible for seventy percent of the construction costs. In 1986 Entergy applied to the Commission for a rate increase, seeking to include approximately $3.15 billion of its River Bend construction costs in its cost of service. Entergy also initiated a contested case to determine what portion of its total costs the utility might include in its rate base as being a "prudent" investment. The two actions were consolidated as Docket 7195.

Over a six-month period, two administrative law judges and a "hearings examiner" (the "Examiners") conducted a hearing on the rate request and submitted to the Commission an

---

[2] DCE is the 1979 estimate of River Bend's total cost of construction. The standard of prudence, as defined by the Commission, is:

> [T]he exercise of that judgment and the choosing of one of that select range of options which a reasonable utility manager would exercise or choose in the same or similar circumstances given the information or alternatives available at the point in time such judgment is exercised or option is chosen.

"Examiner's Report" (the "Report") and proposed order. In the 395-page Report, the Examiners evaluated the prudence of River Bend's costs by examining the parties' evidence. Entergy and a number of other interested parties submitted their own reports, each arguing the prudence of River Bend's cost. The Examiners noted that the evidence demonstrated that every change in construction had been documented, but that the documentation was insufficient to prove that the changes were prudent. Regarding the examiners' opinion of Entergy's evidence, the Report stated:

> [Entergy] did not present any credible reconciliation of plant costs with specific causes, much less with specific regulatory changes. Even if the causes for change were legitimate, it did not show that the amount of money spent to meet various goals were reasonable. It did show more generally that regulatory changes had a dramatic effect on the project's scope and cost. Yet from the evidence one cannot tell how wisely and efficiently money was spent on design development, scope changes, and meeting regulatory changes.

Ultimately, the Report concluded that: (1) $274 million, or nine percent (later adjusted to 8.3 percent), of the total plant cost should be *excluded* from Entergy's cost of service as imprudently incurred; (2) Entergy's decision to restart construction of River Bend in 1979, a decision that some parties criticized, was prudent; and (3) a reasonable DCE, based on information available in 1979, should have been $2.273 billion ("adjusted DCE"), instead of Entergy's construction manager's 1979 estimate of $1.729 billion ("original DCE").

The Commission adopted only part of the Report's recommendations. The Commission agreed with the Examiners that the decision to build River Bend was prudent and that the original DCE should be adjusted upward to $2.273 billion, as this sum was prudently incurred; thus Entergy's seventy percent share of the prudently incurred cost was $1.591 billion. The

3

Commission, however, did not adopt the Report's recommendation to disallow only 8.3 percent of the total plant cost. Instead, the Commission deferred its decision on whether Entergy prudently incurred the remaining $1.453 billion in additional costs. The Commission noted that "[t]he evidence is inadequate to support a finding of either prudence or imprudence with regard to construction costs in excess of $2.273 billion . . . [and] should be excluded from plant in service at this time . . . ." Therefore, the Commission effectively deferred a decision on the additional $1.453 billion.

Entergy and several other parties sued in district court, as authorized by the Public Utility Regulatory Act ("PURA"), seeking judicial review of the Commission's final order in Docket 7195. *See* Act of May 26, 1983, 68th Leg., ch. 274, § 69, 1983 Tex. Gen. Laws 1258, 1314 (amended 1995 & 1997) (current provision at Tex. Util. Code Ann. § 15.001 (West 1998)). Concurrently, Entergy filed a new contested case with the Commission, Docket 8702, to address the $1.453 billion not adjudicated in Docket 7195.

Before direct judicial review began in Docket 7195, the Office of Public Utility Counsel ("OPUC") and twelve municipalities sued the Commission in district court, requesting a declaration that the Commission lacked the power to reconsider, in a separate contested case, the prudence of the $1.453 billion expenditure deferred in Docket 7195. Ancillary to their suit for declaratory relief, the plaintiffs requested a permanent injunction restraining the Commission from conducting any further proceedings addressing the prudence of the $1.453 billion. The district court, declaring that *res judicata* and collateral estoppel barred reconsideration of those costs by the Commission, granted the permanent injunction, enjoining the Commission from proceeding with

4

Docket 8702. The Commission appealed. This Court reversed the district-court judgment and dissolved the injunction, allowing Docket 8702 to proceed. *Public Util. Comm'n v. Coalition of Cities for Affordable Util. Rates*, 777 S.W.2d 814 (Tex. App.—Austin 1989), *rev'd*, *Coalition of Cities for Affordable Util. Rates v. Public Util. Comm'n*, 798 S.W.2d 560 (Tex. 1990). The supreme court reversed this Court, holding that the doctrines of *res judicata* and collateral estoppel barred Entergy's relitigation in Docket 8702 of the issues originally reviewed in Docket 7195, and that "the PUC was powerless to defer its decision to a future proceeding." *Coalition of Cities*, 798 S.W.2d at 564-65. The appeal in Docket 7195 then went forward in the district court, which reversed the Commission's final order on an unstated ground and remanded the rate case to the Commission.

On remand, the Commission held that, because its deferral of the decision on the $1.453 billion was invalid, the remaining portions of the order in Docket 7195 "appeared to hold that [Entergy] had failed to meet its burden" and the $1.453 billion was properly excluded. Entergy appealed. The district court rejected Entergy's argument that the Commission's decision was statutorily infirm but reversed the Commission on two minor points. Entergy, the Commission, and OPUC then appealed to this Court, which reversed the district-court ruling, effectively approving the Commission's order disallowing the $1.453 billion. *Gulf States Utils. Co. v. Coalition of Cities for Affordable Util. Rates*, 883 S.W.2d 739 (Tex. App.—Austin 1994), *rev'd*, *Gulf States Utils. Co. v. Public Util. Comm'n*, 947 S.W.2d 887 (Tex. 1997). The supreme court again reversed, holding that "one simply cannot read the record of proceedings in the PUC and the PUC's order and conclude that the Commission would have excluded the $1.453 billion from [Entergy's] rate base had it known that it could not defer ruling on the issue." *Gulf States Utils.*, 947 S.W.2d at 891. The

supreme court noted that "[a]ll parties were entitled to a straightforward decision from the [Commission] the first time that the case was presented." *Id.* at 892. Finally, in remanding the case to the Commission, the court stated that the Commission could decide whether to entertain further evidence or resolve the case on the evidence previously presented. *Id.*

On remand, the Commission opened a new docket, Docket 17899. Entergy took the position that the Commission "could either: (1) decide the case 'on the record as originally created in Docket No. 7195,' or (2) receive the Company's 'cost reconciliation' study in evidence should the Commission deem such a study necessary." The Commission determined to base its decision on the then existing record and requested that the parties rebrief the case; Entergy agreed with this approach. In a 2-1 decision, the Commission excluded the $1.453 billion from Entergy's cost of service.[3] Entergy sought judicial review in district court, which affirmed the Commission's decision. Entergy again appeals.

## DISCUSSION

By five issues, Entergy argues that the Commission erred in: (1) disregarding the supreme court's opinion and judgment on remand; (2) determining that Entergy failed to present a *prima facie* case establishing the prudence of the plant investment; (3) disallowing all of the plant's construction costs above the adjusted DCE as not supported by substantial evidence, which is an erroneous decision as a matter of law; (4) making arbitrary, after-the-fact changes to the standards

---

[3] Chairman Pat Wood disagreed with the majority, concluding that $103 million of the $348 million in additional regulatory expenses was not disputed by either party and, therefore, should be allowed.

6

governing its prudence analysis; and (5) making certain adjustments to rates that were the product of its erroneous treatment of the plant investment. We begin by examining the supreme court's most recent decision.

**_Gulf States Utilities Co. v. Public Utility Commission_**

By its first issue, Entergy argues that the Commission disregarded the supreme court's opinion in _Gulf States Utilities_, 947 S.W.2d at 887, and the law-of-the-case doctrine. Specifically, Entergy contends that "[a]s a matter of law . . . the Supreme Court decided that [Entergy] had presented a significant amount of evidence supporting the prudence of its entire investment, and that a total disallowance was not supported by the record." We disagree because the supreme court's opinion in _Gulf States Utilities_ does not specifically comment on the weight of the evidence for either party. _See id._ at 888.

The law-of-the-case doctrine provides that questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages. _Hudson v. Wakefield_, 711 S.W.2d 628, 630 (Tex. 1986). The doctrine narrows the issues in successive stages of litigation and serves the policy goals of uniformity of decisions and judicial economy. _Id._ The doctrine does not necessarily apply if the issues and facts are not substantially the same in the subsequent trial. _Id._ As such, use of the law of the case is flexible, left to the discretion of the court, and to be determined on a case-by-case basis. _Med Ctr. Bank v. M.D. Fleetwood_, 854 S.W.2d 278, 283 n.6 (Tex. App.—Austin 1993, writ denied).

The sentence in the supreme court's opinion that Entergy highlights is: "There was extensive evidence supporting inclusion of all [Entergy's] costs in its rate base and extensive

7

contrary evidence that most of these costs should be excluded." *Gulf States Util.*, 947 S.W.2d at 888. Entergy interprets this language as the supreme court's recognition that Entergy presented sufficient evidence to establish its *prima facie* case. In our opinion, this sentence comments on the quantity and not the quality of the evidence introduced. First, this sentence appears in the section in which the court delivers its recitation of the facts. There, the court recounts that Docket 7195 included the testimony of "over 100 witnesses for 132 days [and] the examiners issued a 395-page report." *Id.* Second, the supreme court discussed its earlier opinion, stating that the Commission could not defer decision on disallowance of the $1.453 billion, and that "the issue remaining for judicial review was whether the [Commission] could effectively deny inclusion of those costs in [Entergy's] rate base the way it did." *Id.* at 889, 890 (citing *Coalition of Cities*, 798 S.W.2d at 564-65). Nowhere did the court discuss whether Entergy had established a *prima facie* case or met its burden of substantial evidence. Finally, the court reversed and remanded the case, granting the Commission the option of accepting additional evidence. *Id.* at 892. Again, the supreme court did not comment on the quality of the evidence presented. The court simply ordered the Commission to render a "straightforward decision." *Id.* The law-of-the-case doctrine is inapplicable because the supreme court did not comment on the weight of Entergy's evidence; rather the opinion focused solely on disapproving of the Commission's *procedure* in deferring consideration of the $1.453 billion in costs.[4] Therefore, we overrule Entergy's first issue.

---

[4] In *Gulf States Utilities Co. v. Public Utility Commission*, the supreme court also stated that "one simply cannot read the record of proceedings in the PUC and the PUC's order and conclude that the Commission would have excluded the $1.453 billion from [Entergy's] rate base had it known that it could not defer ruling on the issue." 947 S.W.2d 887, 891 (Tex. 1997). However, we do not believe that this language comments on the weight of the evidence, but rather disapproves of

8

**The *Prima Facie* Case**

By its second issue, Entergy contends that the Commission erred in ruling that Entergy had not established its *prima facie* case of prudence for inclusion of the $1.453 billion in the rate base. The utilities code requires that "[i]n a proceeding involving a proposed rate change, the electric utility has the burden of proving that: . . . the rate change is just and reasonable, if the utility proposes the change." Tex. Util. Code Ann. § 36.006 (West 1998); *Coalition of Cities*, 798 S.W.2d at 563. To raise the price of its product, the utility must participate in a rate case and bear the burden of proving that each dollar of cost incurred was reasonably and prudently invested. *Public Util. Comm'n v. Houston Lighting & Power Co.*, 778 S.W.2d 195, 198 (Tex. App.—Austin 1989, no writ). A utility enjoys no presumption that the expenditures reflected therein have been prudently incurred by simply opening its books to inspection. *Id.* A utility carries the burden of proof even when it does not initiate the proceedings. *Id.*

The Commission has established that although the burden of production is initially on the utility, the utility can shift this burden upon establishing a *prima facie* case of prudence in the rate change.[5] In its order on remand, the Commission described application of the burden of proof:

_____

the Commission's procedure in deferring its decision on whether to include the $1.453 billion in the rate base.

[5] The Commission's brief explains the reason behind the utility's *prima facie* case requirement:

> The Commission's prima facie procedure is Commission-made. It is not established by statute or prior court decision, it was specially crafted by the Commission to aid in the trial of utility prudence reviews. It is a tool to assist in conducting efficient hearings. It is crafted to accommodate the voluminous, highly technical evidence required to establish the prudence of investment in

9

The Commission has previously recognized the proposition that a utility's capital investments are initially presumed to be prudent once the utility has presented a *prima facie* case in support of its application. If the utility presents a *prima facie* case, the burden of going forward (burden of production) shifts to the intervenors to rebut the presumption. Once that presumption is rebutted, the burden falls on the utility to prove, by a preponderance of the evidence, that the challenged expenditures were prudent. Applying this reasoning to this case, the Commission concludes that the burden of going forward did not shift to the intervenors in this case because [Entergy] failed to put on a *prima facie* case to support full recovery of the River Bend expenditures.

Tex. Pub. Util. Comm'n, *Application of Gulf States Utils. Co. for Authority to Change Rates, Remand of Docket 7195*, Docket No. 17899 (Mar. 15, 1998) (order on remand) (citations omitted). Although this paragraph conveys the fact that the Commission held that Entergy had not presented the requisite level of prudence to establish a *prima facie* case, other language in its final order indicates that the Commission believed that Entergy did not meet its overall burden of proof. The Commission's final order continued, stating that "[e]ven taking into account the intervenors' *direct cases* and [Entergy's] *rebuttal*, [Entergy] failed to present a *prima facie* case because . . . [Entergy] could not explain why River Bend cost so much[.]" (Emphasis added.) Moreover, the Commission opined that Entergy "simply did not meet its burden of proof to show that expenditures in excess of $2.273 billion were prudently incurred."[6] The Commission's Final Order indicates that it conducted

electric power plants. The Commission's prima facie procedure allows the utility to establish the prudence by introducing evidence that is comprehensive, but short of proof of the prudence of every bolt, washer, pipe hanger, cable tray, I-beam, or concrete pour.

(Citations omitted.)

[6] In his dissenting statement, Chairman Wood wrote: "While the bulk of the additional costs [Entergy] sought were not shown by the threshold evidentiary level to be prudently incurred, some

a review of the entire record because numerous findings of fact discuss evidence offered by Entergy's opponents to rebut the proposed rate increase—an unnecessary review if a *prima facie* case had not been made. The Commission also observed that "[t]he record in this case is fully developed." Before enumerating the findings of fact and conclusions of law, the Commission concluded:

> that [Entergy] has, by the preponderance of evidence, supported recovery of $2.273 billion as prudently incurred, but [Entergy] has not presented a *prima facie* case supporting recovery of any amounts in excess of that figure. Stated conversely, because [Entergy] failed to prove that any expenses in excess of the adjusted DCE were prudently incurred, the Commission concludes that the $1.453 billion in abeyed costs cannot be included in [Entergy's] rate base.

*Id.* Although the Commission's order on remand uses language that is less than clear concerning the burden of proof and burden of production, we believe that the Commission not only ruled that Entergy had not presented a *prima facie* case, but that the Commission reviewed the entire record and, based on this review, held that Entergy failed to satisfy its burden of proof under the utilities code. *See* Tex. Util. Code Ann. § 36.006. The Commission's repeated references to the entire record supports this view. The following findings of fact and conclusions of law included in the Commission's order indicate that the Commission held that Entergy failed to satisfy its burden of proof and that the Commission made a "straightforward decision" based on the entire record:

> [Finding of Fact] 152: The existence of identifiable imprudence and inefficiency in the construction and management of the plant as set forth in Findings of Fact Nos.

---

amounts were."

11

133-145 corroborates the exclusion of a portion of River Bend's capital costs from plant-in-service.

[Finding of Fact] 164: The preponderance of the evidence in this case establishes that $2.273 billion of River Bend capital costs were prudently and reasonably incurred. The evidence is inadequate to support a finding that construction costs in excess of $2.273 billion were prudently and reasonably incurred.

[Finding of Fact] 164A: [Entergy's] share of all River Bend capital costs in excess of $2.273 billion shall be excluded from plant in service. The amount which should be included in plant in service, given [Entergy's] 70 percent share of the plant, is $1.5911 billion.

[Conclusion of Law] 18: $1,453,520,982 of [Entergy's] share of end-of-test-year River Bend capital shall be excluded from [Entergy's] rate base as invested capital used and useful in rendering service to the public pursuant to PURA Sections 38, 39, and 41.

[Conclusion of Law] 18A: [Entergy] has not met its burden of proving that the capital costs of River Bend above a reasonable Definitive Cost Estimate of $2.273 billion were reasonably and prudently incurred.

Tex. Pub. Util. Comm'n, *Application of Gulf States Utils. Co. for Authority to Change Rates, Remand of Docket 7195*, Docket No. 17899 (Mar. 15, 1998). These findings and conclusions indicate that: (1) the Commission ruled not only on Entergy's failure to establish a *prima facie* case for prudence, but also that the evidence actually showed "imprudence and inefficiency," and (2) Entergy failed in its statutory burden of proof. *See id.* Moreover, the findings and conclusions clearly indicate that Entergy received a straightforward decision.

Docket 17899's findings of fact and conclusions of law are almost identical to those found in the Commission's final order in Docket 7195, which culminated in the supreme court's *Coalition of Cities* decision. *See Coalition of Cities*, 798 S.W.2d at 562. *Coalition of Cities* is instructive. Although the supreme court held that the Commission could not defer its decision to

12

disallow Entergy's rate increase, after listing Findings 164 and 164A and Conclusions 18 and 18A, the court noted that the Commission "found that [Entergy] had failed to prove that any expenses in excess of $2.273 billion were prudently incurred." *Id.* Later, in *Gulf States Utilities* the supreme court clarified its holding in *Coalition of Cities*: "By saying that the PUC *effectively* disallowed the $1.453 billion we did not suggest that the PUC *actually* made that decision." *Gulf States Utils.*, 947 S.W.2d at 889. We recognize that the statements may be *dicta*; however, the court's interpretation of the language used in the Commission's findings and conclusions warrants consideration. In *Coalition of Cities*, the supreme court opined that the language found in Finding 164A, "lack of sufficient evidence," "excluded from plant service," and "all capital costs in excess of $2.273 billion," demonstrated that the Commission believed that Entergy had not met its burden of proof. *Coalition of Cities*, 798 S.W.2d at 563. The supreme court then noted that "[a] party who fails to meet its burden of proof loses." *Id.* (citing *Gerst v. Goldsbury*, 434 S.W.2d 665, 667 (Tex. 1968) (agency determination that applicant offered "insufficient evidence of a public need for the proposed [savings] association" constituted "negative finding")).

In the present action, the Commission used identical language in Findings 164 and 164A and Conclusions 18 and 18A, omitting only the limiting language "at this time" in Docket 7195's Finding 164A. Use of this language indicates, as the *Coalition of Cities* opinion suggests, that the Commission intended to deny inclusion of the $1.453 billion in Entergy's rate increase. Additional findings and conclusions in the Commission's Final Order in Docket 17899 echo that the entire record was reviewed in its decision:

13

[Finding of Fact] 121: The Incremental Estimate File (IEF) was primarily a cost tracking and accounting tool and was not designed to provide justification of cost increases.[7]

[Finding of Fact] 122: The fact that [Entergy] had a legitimate process for reviewing and approving changes in project costs does not show that those costs were reasonable.

[Finding of Fact] 123: The guidelines for coding changes to the regulatory category in the IEF limited the informative value of the IEF.

[Finding of Fact] 124: The PLG [Pickard, Lowe, and Garrick] Report's analysis of the reasons for growth in the cost of River Bend was cursory and inadequate.[8]

[Finding of Fact] 127: The OKA [O'Brien-Kreitzberg & Assoc.] report, although more thorough than the PLG report, reached no conclusions as to imprudence during the construction of River Bend except as regards the 50-month schedule.

[Finding of Fact] 129: Regulatory requirements unforeseen in 1979 may have had an impact on the cost of River Bend, but neither [Entergy] or any other party provided adequate evidence as to any such impact.

[Finding of Fact] 163: The statistical analyses presented in this docket were inadequate to prove the reasonableness or prudence of River Bend construction costs.

[Conclusion of Law] 20: A mere showing that statistical adjustments to plant costs are unreliable or that plant costs are within the range suggested by statistical

---

[7] The IEF program reflected all changes to the original DCE and provided traceability for the reasons cited for the project changes.

[8] Commenting on the Pickard, Lowe and Garrick ("PLG") report, the Commission stated:

The [report] summarized the results of the IEF and was the "centerpiece of [Entergy's] case on the prudence and efficiency of the construction of River Bend." On this point, the Commission does not question that [Entergy] spent $1.453 billion in excess of its share of the adjusted DCE, and that those costs are reflected through the IEF process. Cost tracking an monitoring programs, however, do not support a finding that such costs were prudently incurred—they simply track cost changes and indicate that someone in [Entergy] approved these changes. More is required of [Entergy] to meet its burden of proof.

confidence intervals is inadequate to meet a utility's burden of proof under PURA Section 40.

Tex. Pub. Util. Comm'n, *Application of Gulf States Utils. Co. for Authority to Change Rates, Remand of Docket 7195*, Docket No. 17899 (Mar. 15, 1998). A review of the Commission's Final Order in Docket 17899 indicates that the Commission ruled, after reviewing the entire record, that Entergy had not satisfied its burden of proof or established its *prima facie* case as to the prudence of the additional costs. Therefore, regardless of the Commission's specific language, we believe that Entergy received a "straightforward decision" that the $1.453 billion would not be included in its rate base. We overrule Entergy's second issue.

**Substantial-Evidence Review**

By its third issue on appeal, Entergy contends that the Commission's decision is not supported by substantial evidence. To ascertain whether an agency's decision is supported by substantial evidence, we determine whether, in considering the record upon which the decision is based, "the evidence as a whole is such that reasonable minds could have reached the conclusion the agency must have reached in order to take the disputed action." *City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 186 (Tex. 1994); *Lone Star Salt Water Disposal Co. v. Railroad Comm'n*, 800 S.W.2d 924, 928 (Tex. App.—Austin 1990, no writ). In making such determination, the reviewing court may not substitute its judgment for the agency's and must consider only the record upon which the decision is based. Tex. Gov't Code Ann. § 2001.174 (West 2000); *Lone Star Salt Water Disposal*, 800 S.W.2d at 928. The evidence in the agency record may actually preponderate against the agency's decision, but still constitute substantial evidence supporting it. *Lone Star Salt*

15

*Water Disposal*, 800 S.W.2d at 928. The burden is on the complaining party to demonstrate an absence of substantial evidence. *Id.*

Entergy must demonstrate that the evidence conclusively established the prudence of the $1.453 billion expended. *See Texas Health Facilities Comm'n v. Charter Medical-Dallas, Inc.*, 665 S.W.2d 446, 453 (Tex. 1984). In determining whether Entergy's proposed rate increase was appropriate, the Commission examined two issues: (1) whether the decision to restart and complete construction of River Bend was prudent, and (2) what portion of actual construction costs was reasonably and prudently incurred. In its initial order, the Commission determined that Entergy's decision to restart construction was prudent. Entergy appeals the Commission's decision that no costs above the adjusted DCE were prudently incurred. However, the Commission also held that the original DCE was too low and that the evidence showed that $2.273 billion in plant costs were reasonably and prudently incurred, resulting in the adjusted DCE. But the Commission held that the evidence did not support including any portion of the additional $1.453 billion in Entergy's rate base, as these costs were not prudently incurred.

Entergy makes several arguments regarding the lack of substantial evidence: (1) the Commission's failure to find any prudent costs associated with the schedule extension; (2) the Commission's failure to allow recovery of the full financing costs associated with the River Bend investment that it found prudent; (3) the disallowance is contrary to undisputed expert testimony and has no reasonable basis in the record as a whole; and (4) the record as a whole demonstrates concurrence of the expert witnesses in the prudence of certain costs in excess of the adjusted DCE.

16

Entergy argues that the Commission's failure to find any additional prudent costs associated with the 72-month construction schedule is unsupported by substantial evidence. Entergy contends that the evidence revealed that the 72-month schedule was short compared with other nuclear plants constructed at that time, and that the Commission's own findings reject the notion that River Bend experienced imprudent delays. However, the Commission's findings and conclusions are to the contrary. Findings 71 through 77 state that Entergy's pursuit of the original 50-month schedule was based on "false assumptions," hastily conceived," and "imprudent." Finding 137 states that "[p]ursuit of the 50-month schedule reduced construction productivity." Additionally, the Examiners' Report concluded that "60 months [was] a reasonable schedule for [Entergy] to have contemplated at the time of the DCE." The O'Brian-Kreitzberg report concluded that "the establishment of a 50-month schedule for the project in 1979 was unreasonable and led to the expenditure of $45,777,000 . . . [and that] it is recommended that this expenditure and the associated AFUDC ["Allowance for Funds Used During Construction"] be disallowed."[9]

Regarding Entergy's expenses that the Commission should have found as prudently incurred above the original DCE, Entergy argues that the Commission did not add an amount for AFUDC. Entergy contends that twenty-three percent of $361 million should have been included as AFUDC, as this is the percentage of AFUDC allowed in the original DCE. The Commission responds that the additional sums added to the original DCE include AFUDC or that Entergy did not

---

[9] AFUDC is a fixed percentage determined by the Federal Energy Regulatory Commission that compensates a utility for carrying the costs of construction. *Cities for Fair Util. Rates v. Public Util. Comm'n*, 924 S.W.2d 933, 935-36 (Tex. 1996). Once the utility plant is operational, AFUDC is shifted to the utility's rate base, and the utility begins to earn a return on its investment. *Id*. at 936.

present evidence to support adding AFUDC. Initially, we observe that Finding 19 states the original DCE included AFUDC, while Finding 22 states that the total cost of River Bend ($4.5 billion) included AFUDC. The Commission's adjustments to the original DCE were as follows: (1) schedule increase 50 to 60 months = $183 million; (2) safety and Three Mile Island backfits[10] = $100 million; (3) omissions = $18 million; and (4) contingency = $243 million. The amount for the schedule increase included AFUDC, however, Entergy argues that the other adjustments did not, and this $361 million, multiplied by twenty-three percent, equals an additional $83 million that the Commission should have added to the adjusted DCE as AFUDC. Regarding the $100 million for regulatory issues and the $18 million for omissions, these costs were presented to the Commission by Entergy's experts, who did not indicate whether these costs included AFUDC. As the Commission argues, it was Entergy's burden to show whether its figures included AFUDC, and absent such testimony, the Commission was not required to account for AFUDC. The $243 million in contingency costs was calculated by adding the Commission adjustments to the original DCE, subtracting sunken costs,[11] then multiplying the resulting "to go costs" by fifteen percent ($1.729 billion [original DCE] + $301 million [Commission adjustments] – $412 million [sunken costs] x 15% [Commission added contingency] = $243 million). To the extent that the equation's factors included AFUDC, the resulting $243 million also included AFUDC; however, where Entergy's

---

[10] The PLG report described "Three Mile Island backfits" as required because of the 1979 accident at the Three Mile Island nuclear plant in Pennsylvania. The requirements included additional plant-monitoring instrumentation and control-room modifications.

[11] "Sunken costs" are "cost[s] that [have] already been incurred and that cannot be recovered." *Black's Law Dictionary* 350 (7th ed. 1999).

expert testimony failed to indicate whether the adjustments for safety and Three Mile Island backfits ($100 million) and omissions ($18 million) included AFUDC, the Commission's added contingency of fifteen percent correctly excluded AFUDC.

Entergy complains that the Commission disregarded expert testimony and that the record as a whole demonstrates the prudence of costs in excess of the adjusted DCE. We disagree. It is for the agency to accept or reject witnesses' testimony, and the agency, not the reviewing court, is the judge of the weight accorded that testimony. *Southern Union Gas Co. v. Railroad Comm'n*, 692 S.W.2d 137, 141 (Tex. App.—Austin 1985, writ ref'd n.r.e.). The Commission had ample evidence before it on which to base its decision disallowing the costs in excess of $2.273 billion.

Entergy's argument that all experts and all parties agreed that there were prudent costs above the adjusted DCE is without merit and is the same argument it presented to this Court in *Coalition of Cities*, 883 S.W.2d at 752. Entergy had the burden to prove prudence and could not shift that burden to those challenging its requested rate increase. Tex. Util. Code Ann. § 36.006 (utility bears burden to show prudence of expenditures); *see also Coalition of Cities*, 798 S.W.2d at 563 (utility enjoys no presumption that its expenditures were prudently incurred); *Houston Lighting & Power*, 778 S.W.2d at 198 (to raise rates, utility must bear burden of proving that each dollar of cost incurred was reasonably and prudently invested). The Commission determined that the $1.453 billion above the adjusted DCE was not reasonably and prudently incurred and should not be included in Entergy's rate base. If there is any evidence supporting either an affirmative or a negative finding, we must uphold the agency decision. *Charter Medical-Dallas*, 665 S.W.2d at 453.

19

The evidence is such that reasonable minds could have reached the same conclusion as the Commission. Because there is substantial evidence to support the Commission's decision, we overrule Entergy's third issue.

**The Cost-Reconciliation Study**

By its fourth issue, Entergy argues that the Commission erred by making arbitrary, after-the-fact changes to the standards governing its prudence analysis. Specifically, Entergy argues that the Commission ruled in an earlier decision that a cost-reconciliation study was not a necessary element of a *prima facie* case; therefore, Entergy did not oppose the Commission's decision not to accept the cost-reconciliation study as evidence in Docket 17899.[12] The Commission's order indicates that Entergy failed to "present any credible reconciliation of plant costs with specific causes," which Entergy insists it could have offered in its cost-reconciliation study. The Commission rejoins that Entergy "knew that the parties were demanding proof to reconcile Entergy's cost overruns to its definitive estimate . . . [y]et the record shows that [Entergy] refused to provide such evidence."

The Commission's findings of fact and conclusions of law clearly indicate that Entergy did not meet its burden of proof or make a *prima facie* case as to the prudence of the $1.453 billion. Moreover, the Commission's order finds that "[t]he record . . . is fully developed." Entergy,

---

[12] Entergy directs this Court to the Commission's decision in *Application of Texas Utilities Electric Co. for Authority to Change Rates* to support its argument that the cost-reconciliation study was not required; the Commission responds that Entergy's action is factually distinguishable. *See* Tex. Pub. Util. Comm'n, *Application of Tex. Utils. Elec. Co. for Authority to Change Rates*, Docket No. 9300, 17 Tex. P.U.C. Bull. 2057 (September 27, 1991).

before the decision in Docket 17899, supported the Commission's decision not to take additional evidence and did not submit its cost-reconciliation study. Moreover, Entergy had been afforded earlier opportunities to submit additional evidence to the Commission, but declined to do so. Entergy's argument that a later Commission decision rendered the cost-reconciliation study unnecessary obscures the fact that Entergy had ample opportunity to fully develop the record. The fact remains that Entergy, after a review of the entire record, did not meet the required burden of proof. We overrule Entergy's fourth issue.

**"Flow Through" Adjustments**

By its fifth issue, Entergy posits that the Commission erred by making certain rate adjustments that were the product of its erroneous treatment of the plant investment and that a decision of this Court to order the Commission to determine again the prudence of River Bend's cost would necessarily require a recalculation of these "flow through" costs. Specifically, Entergy argues that the erroneous rate adjustments include Entergy's payments to repurchase River Bend from its project partner, Cajun Electric Power Cooperative ("Cajun"), and that the Commission denied recovery of Entergy's payments to Cajun in proportion to the amount of River Bend investment to which it denied recovery. Additionally, Entergy argues that the level of recovery of River Bend deferred costs, a capital investment item, is limited by and tied to the amount of River Bend recovery. Because we affirm the Commission's decision that any costs above the adjusted DCE were imprudent, a recalculation of the "flow through" costs is unnecessary. We overrule Entergy's fifth issue.

**CONCLUSION**

We affirm the district court's judgment affirming the Commission's decision excluding the additional $1.453 billion from Entergy's rate base.

_____

Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Puryear

Affirmed

Filed:   July 11, 2003