GULF STATES UTILITIES
COMPANY, Petitioner,

v.

PUBLIC UTILITY COMMISSION OF
TEXAS et al., Respondents.

No. 94–1229.

Supreme Court of Texas.

Argued March 19, 1996.

Decided Jan. 31, 1997.

Rehearing Overruled July 31, 1997.

Cecil R. Johnson, Beaumont, C. Robert Heath, Thomas M. Pollan, Barry K. Bishop, John F. Williams, Shannon H. Ratliff, Austin, for Petitioner.

Don R. Butler, Barbara Day, Geoffrey M. Gay, James G. Boyle, Mark W. Smith, Austin, Peter Brickfield, Washington, DC, Bryan L. Baker, Suzi Ray McClellan, Walter Washington, Susan Bergen Schultz, Dan Morales, Rupaco T. Gonzalez, Stephen Fogel, Steven Baron, Scott Sawyer, Austin, Rex D. Van-Middlesworth, Jonathan Day, Frederick D. Junkin, Houston, for Respondents.

HECHT, Justice, delivered the opinion of the Court.

In Docket 7195, the Public Utility Commission considered but refused to decide whether Gulf States Utilities Company was entitled to include in its rate base $1.453 billion in costs to construct the River Bend Nuclear Generating Plant, even though the issue was fully litigated. Instead, having allowed some

of GSU's costs, the PUC attempted to defer the issue to a subsequent proceeding. In *Coalition of Cities for Affordable Utility Rates v. Public Utility Commission,* 798 S.W.2d 560 (Tex.1990), *cert. denied,* 499 U.S. 983, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991), we held that res judicata and collateral estoppel barred relitigation of the issue. The question now before us, not present in *Coalition of Cities,* is whether the PUC erred in refusing to decide the issue in Docket 7195 so that its final order must be reversed. The district court and court of appeals concluded that the PUC did not err. 883 S.W.2d 739. We disagree.

## I

GSU, an electric utility serving customers in southeastern Texas and south central Louisiana, announced its plans to construct River Bend in 1971. The plant was completed at a total cost of nearly $4.5 billion and began commercial operation in 1986. GSU owns a seventy percent interest in the plant.

GSU applied to the PUC to include some $3 billion of its River Bend construction costs in its cost of service and to increase its rates accordingly. In this proceeding, Docket 7195, after hearing testimony from over 100 witnesses for 132 days, the examiners issued a 395-page report recommending to the PUC that only nine percent—about $274 million—of GSU's costs "should be excluded from GSU's rate base as invested capital not used and useful in rendering service to the public". There was extensive evidence supporting inclusion of all GSU's costs in its rate base and extensive contrary evidence that most of those costs should be excluded.

The PUC did not adopt the examiners' report. The Commission agreed that $2.273 billion of River Bend construction costs were reasonably and prudently incurred, and that GSU's seventy-percent share of those costs, $1.591 billion, should be included in its rate base. But the Commission found that "[t]he evidence is inadequate to support a finding of either prudence or imprudence with regard to construction costs in excess of $2.273 billion [with two minor exceptions]." Despite GSU's failure of proof, the Commission expressly refused to exclude the balance of

GSU's costs from its rate base. The Commission also apparently rejected the possibility of remanding the case to the examiners, 16 TEX. ADMIN. CODE § 22.262(c) (West 1996), after GSU's counsel indicated that a remand was "unnecessary". Instead, the Commission believed it could defer ruling until a later proceeding.

Accordingly, the PUC in its final order found that "GSU's share of all River Bend capital costs in excess of $2.273 billion"— $1.453 billion—"should be excluded from plant in service *at this time* for lack of sufficient evidence as to the prudence and reasonableness of those costs." (Emphasis added.) The PUC concluded: "[T]he Commission may reexamine on rehearing or in a subsequent proceeding the prudence and reasonableness of those River Bend construction costs regarding which the evidence is inadequate to support a finding of either prudence or imprudence." Chairman Thomas dissented from the Commission's decision "to hold in abeyance $1.453 billion of the investment in the River Bend Nuclear Power Plant, to allow the Company an opportunity to prove construction prudence on rehearing." Chairman Thomas would have disallowed $459 million of excess costs and excluded $495 million in costs for excess capacity until that capacity became used and useful.

Three things are clear about the PUC's final order in Docket 7195. First, the PUC intended that the order would end the proceeding, except for any motions for rehearing. Second, the PUC intended not to decide whether $1.453 billion of River Bend costs should be included in GSU's rate base. The Commissioners took particular care that no comment during the public hearing be construed as implying a disallowance of the $1.453 billion, rather than a deferral. Third, the PUC contemplated that GSU could initiate a separate proceeding to determine treatment of the $1.453 billion of costs.

GSU and other parties filed motions for rehearing, which were overruled by operation of law when the time expired for the PUC to rule on them. The following parties then sought judicial review in the district court: GSU; Coalition of Cities for Affordable Utility Rates ("CAUR"); the Office of

Public Utility Counsel ("OPC"); Cities of Beaumont, et al. ("Cities"); Texas Industrial Energy Consumers ("TIEC"); and the State of Texas. The district court consolidated all the petitions for judicial review.

While those petitions were pending, GSU initiated a new proceeding in the PUC, Docket 8702, to include in its rate base the $1.453 billion costs "held in abeyance" in Docket 7195. When the PUC indicated that it intended to proceed in Docket 8702, CAUR, OPC, and Cities petitioned the district court for declaratory and injunctive relief. The district court declared that res judicata and collateral estoppel barred relitigation of the issues GSU raised in Docket 8702 and enjoined the PUC from going forward in that proceeding.

GSU and the PUC appealed. The PUC argued:

Since the Commission has clearly expressed its reservation of the prudence determination of $1.45 billion of River Bend's costs, the district court's attempt to construe the Commission's order otherwise is an impermissible substitution of its judgment for that of the Commission. The district court is itself essentially determining that $1.45 billion of GSU's investment in River Bend are permanently disallowed from rate base. It is well settled that a court may not substitute its judgment for that of the administrative agency. As shown above, the Commission's final order does not state such a finding nor does it operate to permanently exclude $1.45 billion from rate base. The Commission's conclusion that GSU did not meet its burden of proving that the $1.45 billion were prudent cannot be interpreted as a final determination of the issue. Too many contingencies are left when that conclusion is read alongside other parts of the order.

\*　　\*　　\*　　\*　　\*　　\*

The myriad of possibilities as to the amount the Commission would have included in or excluded from rate base had it decided not to defer part of River Bend's costs precludes the court's and Appellees' conjectures as to the possible final outcome.

(Citations and footnotes omitted.) CAUR, OPC, and Cities argued that the PUC's finding that GSU had failed to meet its burden of proof amounted to an adjudication of the issue regardless of the PUC's attempt to defer ruling. The court of appeals agreed with GSU and the PUC, reversed the judgment of the district court and dissolved the injunction, thereby allowing Docket 8702 to proceed. *Public Util. Comm'n v. Coalition of Cities for Affordable Util. Rates,* 777 S.W.2d 814 (Tex.App.—Austin 1989).

We reversed the court of appeals. *Coalition of Cities for Affordable Util. Rates v. Public Util. Comm'n,* 798 S.W.2d 560 (Tex. 1990). We reasoned that "the PUC order [in Docket 7195] must be considered final unless the PUC has the statutory power to defer and reconsider such critical issues." *Id.* at 564. Finding no such authority, we concluded that "the PUC was powerless to defer its decision to a future proceeding." *Id.* Inasmuch as the treatment of the $1.453 billion of costs was litigated in Docket 7195 and the PUC's final order did not include it in GSU's rate base, "the PUC *effectively* disallowed that amount from the rate base." *Id.* (emphasis added). Thus, we held, the doctrines of res judicata and collateral estoppel applied to preclude GSU from relitigating the issue in Docket 8702. *Id.* at 565.

By saying that the PUC *effectively* disallowed the $1.453 billion we did not suggest that the PUC *actually* made that decision. The PUC's intention not to do so, but rather to defer the decision, could not have been plainer. The PUC's intention was reflected not only in its own record and order but in its briefing on appeal. Our holding was solely that the legal effect of the PUC's final order was to bar relitigation of issues squarely presented in that proceeding, whether the PUC refused to decide them or not. Without severing the issue of the $1.453 billion from Docket 7195, *see* 16 TEX. ADMIN. CODE § 22.34(b) (West 1996), the PUC could not render a final order that did not have the effect of adjudicating the issue.

Furthermore, we did not decide whether the PUC's order in Docket 7195 was correct; that issue had not yet been addressed by the district court in the consolidated cases for

judicial review. In response to the dissent's contention that "[t]he effect of this decision is to assess a $1.453 billion penalty (permanent disallowance) on GSU all in the name of res judicata and collateral estoppel", 798 S.W.2d at 568 (Gonzalez, J., dissenting), the Court clearly stated:

> All issues relating to the merits of the administrative order, including the prudence of all elements of construction costs, remain to be addressed by the trial court where the consolidated appeals of the parties are pending. . . . In [that] proceeding the burden is upon GSU to show that the PUC's order is not supported by substantial evidence. The claim of the dissent that we have at this point 'assess[ed] a $1.453 billion penalty (permanent disallowance) on GSU' . . . is incorrect.

*Id.* at 565 n. 7. With regard to the $1.453 billion, the issue remaining for judicial review was whether the PUC could effectively deny inclusion of those costs in GSU's rate base the way it did.

Following *Coalition of Cities,* the PUC altered its position. In the judicial review proceeding it joined CAUR, OPC, Cities and others in arguing that the $1.453 billion was properly excluded from GSU's rate base. GSU contended that disallowance of the $1.453 billion did not meet the statutory substantial evidence standard of review because it was arbitrary and capricious and violated the regulatory statute, the prudent investor test, and GSU's constitutional due process rights. The parties also addressed other issues, including the PUC's treatment of GSU's federal income tax expense. The district court rejected GSU's arguments, found relatively minor errors in the PUC's order, and reversed and remanded the case to the PUC solely to address those errors.

The PUC, OPC, and GSU appealed. The court of appeals, by a divided vote, reversed the district court to the extent that court reversed the PUC, thereby in effect approving the PUC's order in its entirety. 883 S.W.2d 739. Only GSU appealed to this Court. The PUC, OPC, Cities, TIEC, and North Star Steel Company have appeared as respondents.

## II

"Any party to a proceeding before the [PUC] is entitled to judicial review under the substantial evidence rule." Public Utility Regulatory Act of 1995, Tex.Rev.Civ. Stat. art. 1446c-0, § 1.301 (Vernon Supp.1996), formerly Public Utility Regulatory Act, Tex. Rev.Civ. Stat. Ann. art. 1446c, § 69 (Vernon 1980), Act of June 2, 1975, 64th Leg., R.S., ch. 721, § 69, 1975 Tex. Gen. Laws 2327, 2349. We therefore apply the substantial evidence rule in this case. The rule is prescribed by statute:

> If the law authorizes review of a decision in a contested case under the substantial evidence rule . . . , *a court* may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion but:
>
> > (1) may affirm the agency decision in whole or in part; and
> >
> > (2) *shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:*
> >
> > > (A) in violation of a constitutional or statutory provision;
> > >
> > > (B) *in excess of the agency's statutory authority;*
> > >
> > > (C) made through unlawful procedure;
> > >
> > > (D) affected by other error of law;
> > >
> > > (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or
> > >
> > > (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Administrative Procedure Act, Tex. Gov't Code § 2001.174, formerly Administrative Procedure and Texas Register Act, Tex.Rev. Civ. Stat. Ann. art. 6252–13a, § 19(e), Act of April 8, 1975, 64th Leg., R.S., ch. 61, § 19(e), 1975 Tex. Gen. Laws 136, 147 (emphasis added). Although GSU argues that the PUC's order is covered by several parts of subparagraph (2), we focus on part (B) and the italicized language.

In *Coalition of Cities* we held that the PUC acted in excess of its statutory authority: "There is no language in [the Public Utility Regulatory Act] that allows the PUC to bifurcate into multiple proceedings the issue of a single investment's prudence." 798 S.W.2d at 564. Even when an agency has exceeded its authority, however, the substantial evidence rule requires reversal only when a party's substantial rights are prejudiced. GSU's right—to include $1.453 billion costs in its rate base if reasonably and prudently incurred—is unquestionably substantial. The issue, then, is prejudice: that is, did the PUC's decision to defer its ruling prejudice inclusion of the $1.453 billion in GSU's rate base?

■ Respondents argue that GSU was not prejudiced by the PUC's attempt to defer its ruling because, despite that error, the PUC reached conclusions tantamount to excluding the $1.453 billion from GSU's rate base. Specifically, the PUC concluded that those costs "should not be included in GSU's rate base" because "GSU has not met its burden of proving that [those costs] were reasonably and prudently incurred." GSU points out the logical fallacy of this argument: if the PUC had concluded that the $1.453 billion should not be included in GSU's rate base, why defer the decision? Why not simply rule and be done with it? GSU argues that the PUC structured its findings and conclusions on the premise that it could defer ruling on the $1.453 billion.

The court of appeals rejected GSU's argument:

Gulf States suggests that the Commission would have altered its findings of facts based on the evidence presented had it known it could not grant the utility a second chance to present more persuasive evidence. However, the Commission is not permitted to determine a just and reasonable rate and then "back into" the required findings of fact. A basic purpose of requiring findings of fact is to ensure that an agency's decision comes *after*, not *before*, a careful consideration of the evidence. Agency conclusions should follow from its serious appraisal of the facts. Gulf States here suggests that if the Commission had

known its decision would be final, it would have reshaped its findings of fact to "back into" a decision more favorable to the utility. We reject this cynical view of the administrative process.

883 S.W.2d at 750. This "cynical view" is the very one the PUC itself expressed in its brief to the same court of appeals in appealing from the district court's declaratory judgment and injunction:

The Commission's conclusion that GSU did not meet its burden of proving that the $1.45 billion were prudent cannot be interpreted as a final determination of the issue. Too many contingencies are left when that conclusion is read alongside other parts of the order.

\*　　\*　　\*　　\*　　\*　　\*

The myriad of possibilities as to the amount the Commission would have included in or excluded from rate base had it decided not to defer part of River Bend's costs precludes the court's and Appellees' conjectures as to the possible final outcome.

(Citations and footnotes omitted.) While the PUC has altered its position since it made this argument, one simply cannot read the record of proceedings in the PUC and the PUC's order and conclude that the Commission would have excluded the $1.453 billion from GSU's rate base had it known that it could not defer ruling on the issue. As Commissioner Greytok emphasized: "We have a portion of that plant [River Bend] held in abeyance, but we do not have a disallowed portion of that plant." For the PUC to depart now from its position reiterated in the past is disingenuous.

The PUC and the other respondents argue that GSU's position is foreclosed by *Coalition of Cities*. As noted above, however, we expressly stated in *Coalition of Cities* that "the prudence of all elements of construction costs ... remain to be addressed". 798 S.W.2d at 565 n. 7. The court of appeals characterized our decision this way:

By its decision in the collateral attack [that is, *Coalition of Cities* ], the supreme court did not intend to bar Gulf States' legal right to a fair adjudication of the

prudence issue or to restrict the scope of judicial review of that adjudication.

883 S.W.2d at 745. In *Coalition of Cities* we stated: "All parties were entitled to a straightforward decision from the PUC the first time that this case was presented." 798 S.W.2d at 565. They did not get it, and we are still not sure, given the PUC's equivocation, what the decision would be.

Accordingly, we conclude that the PUC prejudiced Gulf States' substantial rights by attempting to defer ruling on the proper treatment of the $1.453 billion. We therefore reverse the PUC's order and remand the case to the PUC for further proceedings. We leave to the PUC to determine whether the case should be remanded to the examiners for further evidence or whether the remaining issues can be decided on the evidence previously received in Docket 7195.

### III

■ There is one additional issue. The PUC used the "actual-taxes-paid" method for determining how much federal income tax expense should be included in GSU's rate base. The court of appeals affirmed that portion of the PUC's order. 883 S.W.2d at 756. The order and the court of appeals' opinion preceded our decision in *Public Utility Commission v. GTE–Southwest, Inc.*, 901 S.W.2d 401 (Tex.1995), in which we concluded that the court of appeals erred in imposing the "actual-taxes-paid" method on the PUC. We explained that in determining a utility's federal income tax liability, the PUC cannot consider deductions for disallowed expenses, *id.* at 411–412, but has discretion to consider the savings resulting from the filing of a consolidated tax return, *id.* at 409–411. While *GTE–Southwest* involved available deductions for disallowed noncapital expenses, as opposed to capital costs, we have since held that the same reasoning applied equally to disallowed capital costs, at least to the extent that those costs will never be allowed in rate base. *Public Util. Comm'n v. Texas Util. Elec. Co.*, 935 S.W.2d 109, 110 (Tex. 1996) (per curiam). The determination of what tax expense should be included in GSU's rate base must, therefore, be remand-

ed to the PUC for further consideration in light of *GTE–Southwest* and *Texas Utilities*.

\* \* \* \* \* \*

The judgment of the court of appeals is reversed, the order of the PUC in Docket 7195 is reversed, and the case is remanded to the PUC for further proceedings consistent with this opinion.