# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

--------------
## NO. 03-02-00424-CV
--------------

**Hugo Ramirez, M.D., Appellant**

**v.**

**Texas State Board of Medical Examiners and Lee Anderson, M.D.,
President, Texas State Board of Medical Examiners,
in his Official Capacity, Appellees**

-----------------------------------------------------------------------

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. GN001748, HONORABLE PETER M. LOWRY, JUDGE PRESIDING**

-----------------------------------------------------------------------

## O P I N I O N

Hugo Ramirez sued the Texas State Board of Medical Examiners (the ABoard@) for declaratory and injunctive relief.[1]  He appeals now from a district-court judgment that denies the relief he requested.  We will affirm the judgment.

---

[1] Ramirez joined as a defendant in the cause Lee Anderson in his official capacity as president of the Board.  Anderson is an appellee here.

**THE CONTROVERSY**

Exercising powers delegated to it by the legislature, the Board regulates the practice of medicine. Its powers include authority to promulgate rules governing its proceedings, the performance of its duties, the regulation of the practice of medicine, and the enforcement of related statutes. *See* Tex. Occ. Code Ann. '' 152.001, 153.001 (West 2003). The Board may revoke a physician=s license to practice medicine, following a contested-case hearing, for acts or omissions amounting to unprofessional or dishonorable conduct. *Id.* '' 164.001(a), 164.007, 164.053. A board order revoking a physician=s license is subject to judicial review. *See id.* ' 164.009. There exists, however, a statutory remedy in favor of a physician whose license has been revoked: he or she may apply to the Board for reinstatement, as discussed hereafter.

In 1987, the Board initiated an agency proceeding aimed at revoking Ramirez=s license to practice medicine. The record in the present appeal indicates without dispute that Ramirez received timely notice in the contested case that followed; he was represented therein by two attorneys; a hearing commenced in the case on May 18, 1987, and evidence was received over the following six days; and, by a final order dated August 27, 1987, the Board revoked his license. Ramirez did not, as he was entitled to do, seek judicial review of the order. Nothing in the appellate record indicates that he did not have an adequate opportunity to litigate in the 1987 proceeding any material issues of fact and law.

The holder of a revoked license may apply to the Board for reinstatement of the license. To be eligible for reinstatement, the Aapplicant must prove that the reinstatement . . . is in

the best interests of:  (1) the public; and (2) the person whose license has been . . . revoked.@ *Id.*

**'** 164.151(c).

The Board has by rule given a degree of clarity and specificity to the general term Abest

interests,@ both as to the public and the holder of a revoked license.  *See* 22 Tex. Admin. Code **''**

167.4, 167.5 (2003).  In addition, the Board has promulgated another rule governing its proceedings

in reinstatement cases.  The rule provides as follows:

> In any contested case proceeding regarding a reinstatement request, the Order
> revoking . . . a license is a final action and shall not be subject to further litigation as
> to its findings of fact or conclusions of law, provided, however, that the Order may be
> admissible and relevant for purposes of establishing the basis for the original action and
> subsequent efforts . . . by the physician to demonstrate reinstatement of the license is
> in the best interests of the public and the applicant physician.

*Id.* **'** 167.6.

Since 1993, a Board order refusing reinstatement has been subject to judicial review in

an action brought by the holder of the revoked license; before that year, judicial review of such orders

was not authorized.  *See* Tex. Occ. Code Ann. **'** 164.151(d) (West 2003).

In the years following the 1987 revocation order, Ramirez instituted a series of five

agency proceedings to obtain reinstatement of his license.  In each instance, the Board denied his

application.  We sustained the Board=s 1997 order to that effect.  *See Ramirez v. Texas State Bd. of*

*Med. Exam=rs*, 995 S.W.2d 915, 917 (Tex. App.CAustin 1999, pet. denied).

In March 2000, Ramirez filed his sixth and most recent application for reinstatement.

The matter is pending presently before the Board awaiting a contested-case hearing.

**3**

On June 20, 2000, Ramirez initiated in district court the lawsuit now before us on appeal, requesting a declaratory judgment that rules 167.4, 167.5, and 167.6 do not preclude his showing error, by evidence and legal argument, in the findings of fact and conclusions of law upon which the 1987 revocation order rests; or as he states in his petition, a declaratory judgment that he Ais entitled to present and have heard and considered at his reinstatement hearing all relevant evidence whether or not such evidence tends to undermine the findings of his original revocation order.@ This is, of course, precisely what rule 167.6 forbids save to the limited extent spelled out in the proviso contained in the rule.[2]

Ramirez prayed also for a temporary injunction restraining the Board=s enforcement of rule 167.6 in the contested-case now pending before the Board; and, after final hearing in district court, a permanent injunction to the same effect.

Denying both declaratory and injunctive relief, the district-court judgment, rendered in a judge-only trial, recites as follows:

> [Ramirez] is seeking a declaratory judgment that Board Rule 167.6, which prohibits a relitigation of the original disciplinary complaint, interferes with [his] statutory right under the Medical Practice Act, Texas Occupations Code ' 164.151, to present evidence in his reinstatement proceeding before the State Office of Administrative Hearings. . . . After considering the evidence and hearing of the arguments of counsel, the Court is of the opinion that the Plaintiff has long since exhausted his administrative remedies; that he is barred by the doctrine of res judicata and collateral estoppel from litigating this matter once again; and that [his] application for

---

[2] The proviso, concerning the limited purposes for which a revocation order *is* admissible in a reinstatement proceeding, is not an issue in the present appeal.

declaratory judgment and injunctive relief against the [Board] should be in all things denied.

Ramirez brings three assignments of error. In the discussion that follows, we will consider each under Ramirez=s formulation of the three corresponding issues on appeal as these are set forth in his brief.

## DISCUSSION AND HOLDINGS

### I.

Do Rules 167.4, 167.5 and 167.6 fail to provide sufficient guidance for hearing, with regard to the application for reinstatement of physicians and deny due process and does the current Ainterpretation@ of said rules deny a physician, and in this instance Dr. Hugo Ramirez, equal protection of the law, in violation of the 14th Amendment?

We have examined carefully Ramirez=s AFirst Amended Original Application for a Temporary Injunction,@ his ASecond Amended Original Petition for Declaratory Judgment,@ the reporter=s record and exhibits annexed thereto, Ramirez=s motion for new trial, and, indeed, all of the record before us. We find therein nothing that expressly or impliedly complains of inadequate notice in the rules assailed or a disregard of the constitutional guarantees of due process of law and equal protection of the laws. Even constitutional claims must be asserted in the trial court before they may be raised on appeal. *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993); *Carrizales v. Texas Dep=t of Protective & Regulatory Servs.*, 5 S.W.3d 922, 925 (Tex. App.CAustin 1999, pet. denied). We overrule the assignment of error.

### II.

Did the Trial Court properly apply the law with respect to the issuance of temporary injunctions in denying Dr. Hugo Ramirez his request for injunction?

The burden lay upon Ramirez to bring to this Court an appellate record demonstrating reversible error.  Tex. R. App. P. 33.1(a); *Murray v. Devco, Ltd.*, 731 S.W.2d 555, 557 (Tex. 1987). His application for temporary injunction is contained in his AFirst Amended Original Application for a Temporary Injunction.@ Nothing in the appellate record suggests that the application was presented to or ruled upon by the trial judge before the final judgment was signed.  We overrule the assignment of error.

## III.

Did the Trial Court misapply the doctrine of res judicata, with distinction from collaterally [sic] estoppel?

The foregoing statement of the issue on appeal implies a contention that the trial judge misapplied in some manner or particular the bar-and-merger element (claim preclusion) of *res judicata* as distinguished from the collateral-estoppel element (issue preclusion) of the doctrine.  We confess, however, that we do not understand fully the argument made in connection with this issue on appeal.  We will do the best we can in light of our understanding of what Ramirez intends.

We will summarize Ramirez=s argument in its entirety with liberal quotations from his brief on appeal.  He contends as follows:

1.  In each of its previous five rejections of Ramirez=s applications for reinstatement, the Board used the 1987 revocation order Aas an irrefutable bar@ to his reinstatement.

**6**

2.  Before 1993, Ramirez was Aprecluded from judicial review of this use [of the 1987 order] and the evidence relied thereon and therein on the basis of res judicata and collateral estoppel, notwithstanding that the revocation continues to be used as a bar, as though the events [upon which the revocation order was based?] had freshly occurred or are continuing.@

3.  Collateral estoppel bars only issues actually litigated in a previous adjudication.

4.  AIn the matter at bar, [Ramirez] could not have possibly litigated the issue of >judicial review= because the right [of judicial review] did not exist until 1993.@

5.  A[T]he issues presented in [Ramirez=s] petition for declaratory judgment . . . did not exist in 1987, and could notCobviouslyChave been >actually litigated=. . . because the right did not exist prior to 1993, however, as [the Board] resurfaces [sic] the matters as an evidentiary barCwithout ability to rebutCthis is a matter of first instance and opportunity for judicial redress.@

As we understand Ramirez=s argument, he complains in substance that the Board intends, by enforcing its rule 167.6 in the contested case pending before it, to prevent Ramirez=s collateral attack upon the findings of fact and conclusions of law upon which the 1987 revocation order rests.  Ramirez fails to suggest, however, any reason why the rule is not enforceable and the record and applicable statutes reveal none.  But even if the rule were not enforceable for some reason, the consequence would be the same.  A common-law analogy applicable in such administrative-agency proceedings invests the 1987 revocation order with collateral-estoppel effect, precluding Ramirez from litigating anew the issues resolved in the 1987 contested case.  *See Gulf States Utils. Co. v. Public Util. Comm=n*, 947 S.W.2d 887, 888 (Tex. 1997); *Coalition of Cities for Affordable Util. Rates*

*v. Public Util. Comm=n*, 798 S.W.2d 560, 562-63 (Tex. 1990); *Boniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984).

In the judicial context, both claim-preclusion and issue-preclusion derive from Aa judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise@; and, they apply alike in judicial and administrative-agency contexts subject to one qualification: while a presumption favors the preclusive effect of a final order issued by an agency in an adjudicatory proceeding, a relevant statutory provision may indicate a contrary legislative intention. *Astoria Fed. Sav. & Loan Ass=n v. Solimino*, 501 U.S. 104, 107-108 (1991). For example, the legislature may have delegated to the agency a power to re-open an adjudicatory proceeding resolved by a final order. *See Sexton v. Mount Olivet Cemetery. Ass=n*, 720 S.W.2d 129, 138-39 (Tex. App.CAustin 1986, writ ref=d n.r.e.). Nothing in the relevant statutes here suggests such an intention on the part of the legislature. In fact, the statutory provisions authorizing reinstatement proceedings refute an intention of that character; reinstatement would be a meaningless statutory remedy if a revocation proceeding and final order were subject to re-opening.

Ramirez=s brief implies perhaps that he did not have an adequate opportunity to litigate issues pertaining to the 1987 revocation proceeding. Nothing in the record supports that implication; indeed, it suggests the opposite without contradiction. It shows affirmatively that Ramirez had an opportunity in the 1987 contested case to present evidence after due notice, cross-examine witnesses, file briefs, and sue for judicial review if he believed the revocation order to be erroneous, as mentioned previously. *See* 2 Richard J. Pierce, Jr., *Administrative Law Treatise* ' 13.3, at 888, 891 (4th ed. 2002).

**8**

We overrule Ramirez=s third assignment of error.

Because Ramirez has not shown reversible error in the denial of declaratory relief, we need not discuss the trial court=s denial of a permanent injunction.

We affirm the judgment below.

_____

John E. Powers, Justice

Before Chief Justice Law, Justices B. A. Smith and Powers[*]

Affirmed

Filed:   February 27, 2003

**9**

**10**