TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-02-00249-CV






Entergy Gulf States, Inc., Appellant


v.


Public Utility Commission of Texas, Texas Industrial Energy Consumers, City of

Beaumont, City of Bridge City, City of Conroe, City of Groves, City of

Nederland, and City of Port Neches, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT

NO. 98-08017, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING





O P I N I O N




 Appellant Entergy Gulf States, Inc. ("Entergy") appeals from a district-court judgment
affirming a final order of appellee the Public Utility Commission of Texas (the "Commission"). (1) 
Entergy sought a rate increase to recover additional sums from its share in the construction of the
River Bend Nuclear Generating Station in St. Francisville, Louisiana ("River Bend"). The
Commission denied Entergy's request, finding that Entergy failed to present a prima facie case that
the additional cost of the plant's construction above the adjusted definitive cost estimate ("DCE")
was prudent. (2) Appellees Texas Industrial Energy Consumers and the cities of Beaumont, Bridge
City, Conroe, Groves, Nederland, and Port Neches support the Commission's decision denying the
rate increase. We will affirm.


STATEMENT OF THE FACTS AND PROCEDURAL HISTORY


 Construction of River Bend began in 1977. After suspending construction from
October 1977 to February 1979, construction resumed and the plant achieved operational status in
1986. At that time, River Bend began serving customers in Southeast Texas and South Central
Louisiana. River Bend's construction cost approximately $4.5 billion, well above the original cost
estimate. As a partner in the project, Entergy was responsible for seventy percent of the construction
costs. In 1986 Entergy applied to the Commission for a rate increase, seeking to include
approximately $3.15 billion of its River Bend construction costs in its cost of service. Entergy also
initiated a contested case to determine what portion of its total costs the utility might include in its
rate base as being a "prudent" investment. The two actions were consolidated as Docket 7195.

 Over a six-month period, two administrative law judges and a "hearings examiner"
(the "Examiners") conducted a hearing on the rate request and submitted to the Commission an
"Examiner's Report" (the "Report") and proposed order. In the 395-page Report, the Examiners
evaluated the prudence of River Bend's costs by examining the parties' evidence. Entergy and a
number of other interested parties submitted their own reports, each arguing the prudence of River
Bend's cost. The Examiners noted that the evidence demonstrated that every change in construction
had been documented, but that the documentation was insufficient to prove that the changes were
prudent. Regarding the examiners' opinion of Entergy's evidence, the Report stated:


[Entergy] did not present any credible reconciliation of plant costs with specific
causes, much less with specific regulatory changes. Even if the causes for change
were legitimate, it did not show that the amount of money spent to meet various goals
were reasonable. It did show more generally that regulatory changes had a dramatic
effect on the project's scope and cost. Yet from the evidence one cannot tell how
wisely and efficiently money was spent on design development, scope changes, and
meeting regulatory changes.



Ultimately, the Report concluded that: (1) $274 million, or nine percent (later adjusted to 8.3
percent), of the total plant cost should be excluded from Entergy's cost of service as imprudently
incurred; (2) Entergy's decision to restart construction of River Bend in 1979, a decision that some
parties criticized, was prudent; and (3) a reasonable DCE, based on information available in 1979,
should have been $2.273 billion ("adjusted DCE"), instead of Entergy's construction manager's 1979
estimate of $1.729 billion ("original DCE").

 The Commission adopted only part of the Report's recommendations. The
Commission agreed with the Examiners that the decision to build River Bend was prudent and that
the original DCE should be adjusted upward to $2.273 billion, as this sum was prudently incurred;
thus Entergy's seventy percent share of the prudently incurred cost was $1.591 billion. The
Commission, however, did not adopt the Report's recommendation to disallow only 8.3 percent of
the total plant cost. Instead, the Commission deferred its decision on whether Entergy prudently
incurred the remaining $1.453 billion in additional costs. The Commission noted that "[t]he
evidence is inadequate to support a finding of either prudence or imprudence with regard to
construction costs in excess of $2.273 billion . . . [and] should be excluded from plant in service at
this time . . . ." Therefore, the Commission effectively deferred a decision on the additional $1.453
billion.

 Entergy and several other parties sued in district court, as authorized by the Public
Utility Regulatory Act ("PURA"), seeking judicial review of the Commission's final order in Docket
7195. See Act of May 26, 1983, 68th Leg., ch. 274, § 69, 1983 Tex. Gen. Laws 1258, 1314
(amended 1995 & 1997) (current provision at Tex. Util. Code Ann. § 15.001 (West 1998)). 
Concurrently, Entergy filed a new contested case with the Commission, Docket 8702, to address the
$1.453 billion not adjudicated in Docket 7195.

 Before direct judicial review began in Docket 7195, the Office of Public Utility
Counsel ("OPUC") and twelve municipalities sued the Commission in district court, requesting a
declaration that the Commission lacked the power to reconsider, in a separate contested case, the
prudence of the $1.453 billion expenditure deferred in Docket 7195. Ancillary to their suit for
declaratory relief, the plaintiffs requested a permanent injunction restraining the Commission from
conducting any further proceedings addressing the prudence of the $1.453 billion. The district court,
declaring that res judicata and collateral estoppel barred reconsideration of those costs by the
Commission, granted the permanent injunction, enjoining the Commission from proceeding with
Docket 8702. The Commission appealed. This Court reversed the district-court judgment and
dissolved the injunction, allowing Docket 8702 to proceed. Public Util. Comm'n v. Coalition of
Cities for Affordable Util. Rates, 777 S.W.2d 814 (Tex. App.--Austin 1989), rev'd, Coalition of
Cities for Affordable Util. Rates v. Public Util. Comm'n, 798 S.W.2d 560 (Tex. 1990). The supreme
court reversed this Court, holding that the doctrines of res judicata and collateral estoppel barred
Entergy's relitigation in Docket 8702 of the issues originally reviewed in Docket 7195, and that "the
PUC was powerless to defer its decision to a future proceeding." Coalition of Cities, 798 S.W.2d
at 564-65. The appeal in Docket 7195 then went forward in the district court, which reversed the
Commission's final order on an unstated ground and remanded the rate case to the Commission.

 On remand, the Commission held that, because its deferral of the decision on the
$1.453 billion was invalid, the remaining portions of the order in Docket 7195 "appeared to hold that
[Entergy] had failed to meet its burden" and the $1.453 billion was properly excluded. Entergy
appealed. The district court rejected Entergy's argument that the Commission's decision was
statutorily infirm but reversed the Commission on two minor points. Entergy, the Commission, and
OPUC then appealed to this Court, which reversed the district-court ruling, effectively approving
the Commission's order disallowing the $1.453 billion. Gulf States Utils. Co. v. Coalition of Cities
for Affordable Util. Rates, 883 S.W.2d 739 (Tex. App.--Austin 1994), rev'd, Gulf States Utils. Co.
v. Public Util. Comm'n, 947 S.W.2d 887 (Tex. 1997). The supreme court again reversed, holding
that "one simply cannot read the record of proceedings in the PUC and the PUC's order and conclude
that the Commission would have excluded the $1.453 billion from [Entergy's] rate base had it
known that it could not defer ruling on the issue." Gulf States Utils., 947 S.W.2d at 891. The
supreme court noted that "[a]ll parties were entitled to a straightforward decision from the
[Commission] the first time that the case was presented." Id. at 892. Finally, in remanding the case
to the Commission, the court stated that the Commission could decide whether to entertain further
evidence or resolve the case on the evidence previously presented. Id.

 On remand, the Commission opened a new docket, Docket 17899. Entergy took the
position that the Commission "could either: (1) decide the case 'on the record as originally created
in Docket No. 7195,' or (2) receive the Company's 'cost reconciliation' study in evidence should
the Commission deem such a study necessary." The Commission determined to base its decision
on the then existing record and requested that the parties rebrief the case; Entergy agreed with this
approach. In a 2-1 decision, the Commission excluded the $1.453 billion from Entergy's cost of
service. (3) Entergy sought judicial review in district court, which affirmed the Commission's decision. 
Entergy again appeals.


DISCUSSION


 By five issues, Entergy argues that the Commission erred in: (1) disregarding the
supreme court's opinion and judgment on remand; (2) determining that Entergy failed to present a
prima facie case establishing the prudence of the plant investment; (3) disallowing all of the plant's
construction costs above the adjusted DCE as not supported by substantial evidence, which is an
erroneous decision as a matter of law; (4) making arbitrary, after-the-fact changes to the standards
governing its prudence analysis; and (5) making certain adjustments to rates that were the product
of its erroneous treatment of the plant investment. We begin by examining the supreme court's most
recent decision.


Gulf States Utilities Co. v. Public Utility Commission

 By its first issue, Entergy argues that the Commission disregarded the supreme court's
opinion in Gulf States Utilities, 947 S.W.2d at 887, and the law-of-the-case doctrine. Specifically,
Entergy contends that "[a]s a matter of law . . . the Supreme Court decided that [Entergy] had
presented a significant amount of evidence supporting the prudence of its entire investment, and that
a total disallowance was not supported by the record." We disagree because the supreme court's
opinion in Gulf States Utilities does not specifically comment on the weight of the evidence for
either party. See id. at 888.

 The law-of-the-case doctrine provides that questions of law decided on appeal to a
court of last resort will govern the case throughout its subsequent stages. Hudson v. Wakefield, 711
S.W.2d 628, 630 (Tex. 1986). The doctrine narrows the issues in successive stages of litigation and
serves the policy goals of uniformity of decisions and judicial economy. Id. The doctrine does not
necessarily apply if the issues and facts are not substantially the same in the subsequent trial. Id. 
As such, use of the law of the case is flexible, left to the discretion of the court, and to be determined
on a case-by-case basis. Med Ctr. Bank v. M.D. Fleetwood, 854 S.W.2d 278, 283 n.6 (Tex.
App.--Austin 1993, writ denied).

 The sentence in the supreme court's opinion that Entergy highlights is: "There was
extensive evidence supporting inclusion of all [Entergy's] costs in its rate base and extensive
contrary evidence that most of these costs should be excluded." Gulf States Util., 947 S.W.2d at
888. Entergy interprets this language as the supreme court's recognition that Entergy presented
sufficient evidence to establish its prima facie case. In our opinion, this sentence comments on the
quantity and not the quality of the evidence introduced. First, this sentence appears in the section
in which the court delivers its recitation of the facts. There, the court recounts that Docket 7195
included the testimony of "over 100 witnesses for 132 days [and] the examiners issued a 395-page
report." Id. Second, the supreme court discussed its earlier opinion, stating that the Commission
could not defer decision on disallowance of the $1.453 billion, and that "the issue remaining for
judicial review was whether the [Commission] could effectively deny inclusion of those costs in
[Entergy's] rate base the way it did." Id. at 889, 890 (citing Coalition of Cities, 798 S.W.2d at 564-65). Nowhere did the court discuss whether Entergy had established a prima facie case or met its
burden of substantial evidence. Finally, the court reversed and remanded the case, granting the 
Commission the option of accepting additional evidence. Id. at 892. Again, the supreme court did
not comment on the quality of the evidence presented. The court simply ordered the Commission
to render a "straightforward decision." Id. The law-of-the-case doctrine is inapplicable because the
supreme court did not comment on the weight of Entergy's evidence; rather the opinion focused
solely on disapproving of the Commission's procedure in deferring consideration of the $1.453
billion in costs. (4) Therefore, we overrule Entergy's first issue.

The Prima Facie Case

 By its second issue, Entergy contends that the Commission erred in ruling that
Entergy had not established its prima facie case of prudence for inclusion of the $1.453 billion in
the rate base. The utilities code requires that "[i]n a proceeding involving a proposed rate change,
the electric utility has the burden of proving that: . . . the rate change is just and reasonable, if the
utility proposes the change." Tex. Util. Code Ann. § 36.006 (West 1998); Coalition of Cities, 798
S.W.2d at 563. To raise the price of its product, the utility must participate in a rate case and bear
the burden of proving that each dollar of cost incurred was reasonably and prudently invested. 
Public Util. Comm'n v. Houston Lighting & Power Co., 778 S.W.2d 195, 198 (Tex. App.--Austin
1989, no writ). A utility enjoys no presumption that the expenditures reflected therein have been
prudently incurred by simply opening its books to inspection. Id. A utility carries the burden of
proof even when it does not initiate the proceedings. Id.

 The Commission has established that although the burden of production is initially
on the utility, the utility can shift this burden upon establishing a prima facie case of prudence in the
rate change. (5) In its order on remand, the Commission described application of the burden of proof:

The Commission has previously recognized the proposition that a utility's capital
investments are initially presumed to be prudent once the utility has presented a
prima facie case in support of its application. If the utility presents a prima facie
case, the burden of going forward (burden of production) shifts to the intervenors to
rebut the presumption. Once that presumption is rebutted, the burden falls on the
utility to prove, by a preponderance of the evidence, that the challenged expenditures
were prudent. Applying this reasoning to this case, the Commission concludes that
the burden of going forward did not shift to the intervenors in this case because
[Entergy] failed to put on a prima facie case to support full recovery of the River
Bend expenditures.



Tex. Pub. Util. Comm'n, Application of Gulf States Utils. Co. for Authority to Change Rates,
Remand of Docket 7195, Docket No. 17899 (Mar. 15, 1998) (order on remand) (citations omitted). 
Although this paragraph conveys the fact that the Commission held that Entergy had not presented
the requisite level of prudence to establish a prima facie case, other language in its final order
indicates that the Commission believed that Entergy did not meet its overall burden of proof. The
Commission's final order continued, stating that "[e]ven taking into account the intervenors' direct
cases and [Entergy's] rebuttal, [Entergy] failed to present a prima facie case because . . . [Entergy]
could not explain why River Bend cost so much[.]" (Emphasis added.) Moreover, the Commission
opined that Entergy "simply did not meet its burden of proof to show that expenditures in excess of
$2.273 billion were prudently incurred." (6) The Commission's Final Order indicates that it conducted
a review of the entire record because numerous findings of fact discuss evidence offered by
Entergy's opponents to rebut the proposed rate increase--an unnecessary review if a prima facie case
had not been made. The Commission also observed that "[t]he record in this case is fully
developed." Before enumerating the findings of fact and conclusions of law, the Commission
concluded:


that [Entergy] has, by the preponderance of evidence, supported recovery of $2.273
billion as prudently incurred, but [Entergy] has not presented a prima facie case
supporting recovery of any amounts in excess of that figure. Stated conversely,
because [Entergy] failed to prove that any expenses in excess of the adjusted DCE
were prudently incurred, the Commission concludes that the $1.453 billion in abeyed
costs cannot be included in [Entergy's] rate base.



Id. Although the Commission's order on remand uses language that is less than clear concerning the
burden of proof and burden of production, we believe that the Commission not only ruled that
Entergy had not presented a prima facie case, but that the Commission reviewed the entire record
and, based on this review, held that Entergy failed to satisfy its burden of proof under the utilities
code. See Tex. Util. Code Ann. § 36.006. The Commission's repeated references to the entire
record supports this view. The following findings of fact and conclusions of law included in the
Commission's order indicate that the Commission held that Entergy failed to satisfy its burden of
proof and that the Commission made a "straightforward decision" based on the entire record:


[Finding of Fact] 152:  The existence of identifiable imprudence and inefficiency in
the construction and management of the plant as set forth in Findings of Fact Nos.
133-145 corroborates the exclusion of a portion of River Bend's capital costs from
plant-in-service.


[Finding of Fact] 164:  The preponderance of the evidence in this case establishes
that $2.273 billion of River Bend capital costs were prudently and reasonably
incurred. The evidence is inadequate to support a finding that construction costs in
excess of $2.273 billion were prudently and reasonably incurred.


[Finding of Fact] 164A:  [Entergy's] share of all River Bend capital costs in excess
of $2.273 billion shall be excluded from plant in service. The amount which should
be included in plant in service, given [Entergy's] 70 percent share of the plant, is
$1.5911 billion.


[Conclusion of Law] 18:  $1,453,520,982 of [Entergy's] share of end-of-test-year
River Bend capital shall be excluded from [Entergy's] rate base as invested capital
used and useful in rendering service to the public pursuant to PURA Sections 38, 39,
and 41.


[Conclusion of Law] 18A:  [Entergy] has not met its burden of proving that the
capital costs of River Bend above a reasonable Definitive Cost Estimate of $2.273
billion were reasonably and prudently incurred.



Tex. Pub. Util. Comm'n, Application of Gulf States Utils. Co. for Authority to Change Rates,
Remand of Docket 7195, Docket No. 17899 (Mar. 15, 1998). These findings and conclusions
indicate that: (1) the Commission ruled not only on Entergy's failure to establish a prima facie case
for prudence, but also that the evidence actually showed "imprudence and inefficiency," and (2)
Entergy failed in its statutory burden of proof. See id. Moreover, the findings and conclusions
clearly indicate that Entergy received a straightforward decision.

 Docket 17899's findings of fact and conclusions of law are almost identical to those
found in the Commission's final order in Docket 7195, which culminated in the supreme court's
Coalition of Cities decision. See Coalition of Cities, 798 S.W.2d at 562. Coalition of Cities is
instructive. Although the supreme court held that the Commission could not defer its decision to
disallow Entergy's rate increase, after listing Findings 164 and 164A and Conclusions 18 and 18A,
the court noted that the Commission "found that [Entergy] had failed to prove that any expenses in
excess of $2.273 billion were prudently incurred." Id. Later, in Gulf States Utilities the supreme
court clarified its holding in Coalition of Cities: "By saying that the PUC effectively disallowed the
$1.453 billion we did not suggest that the PUC actually made that decision." Gulf States Utils., 947
S.W.2d at 889. We recognize that the statements may be dicta; however, the court's interpretation
of the language used in the Commission's findings and conclusions warrants consideration. In
Coalition of Cities, the supreme court opined that the language found in Finding 164A, "lack of
sufficient evidence," "excluded from plant service," and "all capital costs in excess of $2.273
billion," demonstrated that the Commission believed that Entergy had not met its burden of proof. 
Coalition of Cities, 798 S.W.2d at 563. The supreme court then noted that "[a] party who fails to
meet its burden of proof loses." Id. (citing Gerst v. Goldsbury, 434 S.W.2d 665, 667 (Tex. 1968)
(agency determination that applicant offered "insufficient evidence of a public need for the proposed
[savings] association" constituted "negative finding")).

 In the present action, the Commission used identical language in Findings 164 and
164A and Conclusions 18 and 18A, omitting only the limiting language "at this time" in Docket
7195's Finding 164A. Use of this language indicates, as the Coalition of Cities opinion suggests,
that the Commission intended to deny inclusion of the $1.453 billion in Entergy's rate increase. 
Additional findings and conclusions in the Commission's Final Order in Docket 17899 echo that the
entire record was reviewed in its decision:


[Finding of Fact] 121:  The Incremental Estimate File (IEF) was primarily a cost
tracking and accounting tool and was not designed to provide justification of cost
increases. (7)


[Finding of Fact] 122:  The fact that [Entergy] had a legitimate process for reviewing
and approving changes in project costs does not show that those costs were
reasonable.


[Finding of Fact] 123:  The guidelines for coding changes to the regulatory category
in the IEF limited the informative value of the IEF.


[Finding of Fact] 124:  The PLG [Pickard, Lowe, and Garrick] Report's analysis of
the reasons for growth in the cost of River Bend was cursory and inadequate. (8)


[Finding of Fact] 127:  The OKA [O'Brien-Kreitzberg & Assoc.] report, although
more thorough than the PLG report, reached no conclusions as to imprudence during
the construction of River Bend except as regards the 50-month schedule.


[Finding of Fact] 129:  Regulatory requirements unforeseen in 1979 may have had
an impact on the cost of River Bend, but neither [Entergy] or any other party
provided adequate evidence as to any such impact.


[Finding of Fact] 163:  The statistical analyses presented in this docket were
inadequate to prove the reasonableness or prudence of River Bend construction costs.


[Conclusion of Law] 20:  A mere showing that statistical adjustments to plant costs
are unreliable or that plant costs are within the range suggested by statistical
confidence intervals is inadequate to meet a utility's burden of proof under PURA
Section 40.



Tex. Pub. Util. Comm'n, Application of Gulf States Utils. Co. for Authority to Change Rates,
Remand of Docket 7195, Docket No. 17899 (Mar. 15, 1998). A review of the Commission's Final
Order in Docket 17899 indicates that the Commission ruled, after reviewing the entire record, that
Entergy had not satisfied its burden of proof or established its prima facie case as to the prudence
of the additional costs. Therefore, regardless of the Commission's specific language, we believe that
Entergy received a "straightforward decision" that the $1.453 billion would not be included in its
rate base. We overrule Entergy's second issue.


Substantial-Evidence Review

 By its third issue on appeal, Entergy contends that the Commission's decision is not
supported by substantial evidence. To ascertain whether an agency's decision is supported by
substantial evidence, we determine whether, in considering the record upon which the decision is
based, "the evidence as a whole is such that reasonable minds could have reached the conclusion 
the agency must have reached in order to take the disputed action." City of El Paso v. Public Util.
Comm'n, 883 S.W.2d 179, 186 (Tex. 1994); Lone Star Salt Water Disposal Co. v. Railroad Comm'n,
800 S.W.2d 924, 928 (Tex. App.--Austin 1990, no writ). In making such determination, the
reviewing court may not substitute its judgment for the agency's and must consider only the record
upon which the decision is based. Tex. Gov't Code Ann. § 2001.174 (West 2000); Lone Star Salt
Water Disposal, 800 S.W.2d at 928. The evidence in the agency record may actually preponderate
against the agency's decision, but still constitute substantial evidence supporting it. Lone Star Salt
Water Disposal, 800 S.W.2d at 928. The burden is on the complaining party to demonstrate an
absence of substantial evidence. Id.

 Entergy must demonstrate that the evidence conclusively established the prudence
of the $1.453 billion expended. See Texas Health Facilities Comm'n v. Charter Medical-Dallas,
Inc., 665 S.W.2d 446, 453 (Tex. 1984). In determining whether Entergy's proposed rate increase
was appropriate, the Commission examined two issues: (1) whether the decision to restart and
complete construction of River Bend was prudent, and (2) what portion of actual construction costs
was reasonably and prudently incurred. In its initial order, the Commission determined that
Entergy's decision to restart construction was prudent. Entergy appeals the Commission's decision
that no costs above the adjusted DCE were prudently incurred. However, the Commission also held
that the original DCE was too low and that the evidence showed that $2.273 billion in plant costs
were reasonably and prudently incurred, resulting in the adjusted DCE. But the Commission held
that the evidence did not support including any portion of the additional $1.453 billion in Entergy's
rate base, as these costs were not prudently incurred.

 Entergy makes several arguments regarding the lack of substantial evidence: (1) the
Commission's failure to find any prudent costs associated with the schedule extension; (2) the
Commission's failure to allow recovery of the full financing costs associated with the River Bend
investment that it found prudent; (3) the disallowance is contrary to undisputed expert testimony and
has no reasonable basis in the record as a whole; and (4) the record as a whole demonstrates
concurrence of the expert witnesses in the prudence of certain costs in excess of the adjusted DCE.

 Entergy argues that the Commission's failure to find any additional prudent costs
associated with the 72-month construction schedule is unsupported by substantial evidence. Entergy
contends that the evidence revealed that the 72-month schedule was short compared with other
nuclear plants constructed at that time, and that the Commission's own findings reject the notion that
River Bend experienced imprudent delays. However, the Commission's findings and conclusions
are to the contrary. Findings 71 through 77 state that Entergy's pursuit of the original 50-month
schedule was based on "false assumptions," hastily conceived," and "imprudent." Finding 137 states
that "[p]ursuit of the 50-month schedule reduced construction productivity." Additionally, the
Examiners' Report concluded that "60 months [was] a reasonable schedule for [Entergy] to have
contemplated at the time of the DCE." The O'Brian-Kreitzberg report concluded that "the
establishment of a 50-month schedule for the project in 1979 was unreasonable and led to the
expenditure of $45,777,000 . . . [and that] it is recommended that this expenditure and the associated
AFUDC ["Allowance for Funds Used During Construction"] be disallowed." (9)

 Regarding Entergy's expenses that the Commission should have found as prudently
incurred above the original DCE, Entergy argues that the Commission did not add an amount for
AFUDC. Entergy contends that twenty-three percent of $361 million should have been included as
AFUDC, as this is the percentage of AFUDC allowed in the original DCE. The Commission
responds that the additional sums added to the original DCE include AFUDC or that Entergy did not
present evidence to support adding AFUDC. Initially, we observe that Finding 19 states the original
DCE included AFUDC, while Finding 22 states that the total cost of River Bend ($4.5 billion)
included AFUDC. The Commission's adjustments to the original DCE were as follows: (1)
schedule increase 50 to 60 months = $183 million; (2) safety and Three Mile Island backfits (10) = $100
million; (3) omissions = $18 million; and (4) contingency = $243 million. The amount for the
schedule increase included AFUDC, however, Entergy argues that the other adjustments did not, and
this $361 million, multiplied by twenty-three percent, equals an additional $83 million that the
Commission should have added to the adjusted DCE as AFUDC. Regarding the $100 million for
regulatory issues and the $18 million for omissions, these costs were presented to the Commission
by Entergy's experts, who did not indicate whether these costs included AFUDC. As the
Commission argues, it was Entergy's burden to show whether its figures included AFUDC, and
absent such testimony, the Commission was not required to account for AFUDC. The $243 million
in contingency costs was calculated by adding the Commission adjustments to the original DCE,
subtracting sunken costs, (11) then multiplying the resulting "to go costs" by fifteen percent ($1.729
billion [original DCE] + $301 million [Commission adjustments] - $412 million [sunken costs] x
15% [Commission added contingency] = $243 million). To the extent that the equation's factors
included AFUDC, the resulting $243 million also included AFUDC; however, where Entergy's
expert testimony failed to indicate whether the adjustments for safety and Three Mile Island backfits
($100 million) and omissions ($18 million) included AFUDC, the Commission's added contingency
of fifteen percent correctly excluded AFUDC.

 Entergy complains that the Commission disregarded expert testimony and that the
record as a whole demonstrates the prudence of costs in excess of the adjusted DCE. We disagree. 
It is for the agency to accept or reject witnesses' testimony, and the agency, not the reviewing court,
is the judge of the weight accorded that testimony. Southern Union Gas Co. v. Railroad Comm'n,
692 S.W.2d 137, 141 (Tex. App.--Austin 1985, writ ref'd n.r.e.). The Commission had ample
evidence before it on which to base its decision disallowing the costs in excess of $2.273 billion.

 Entergy's argument that all experts and all parties agreed that there were prudent costs
above the adjusted DCE is without merit and is the same argument it presented to this Court in
Coalition of Cities, 883 S.W.2d at 752. Entergy had the burden to prove prudence and could not
shift that burden to those challenging its requested rate increase. Tex. Util. Code Ann. § 36.006
(utility bears burden to show prudence of expenditures); see also Coalition of Cities, 798 S.W.2d
at 563 (utility enjoys no presumption that its expenditures were prudently incurred); Houston
Lighting & Power, 778 S.W.2d at 198 (to raise rates, utility must bear burden of proving that each
dollar of cost incurred was reasonably and prudently invested). The Commission determined that
the $1.453 billion above the adjusted DCE was not reasonably and prudently incurred and should
not be included in Entergy's rate base. If there is any evidence supporting either an affirmative or
a negative finding, we must uphold the agency decision. Charter Medical-Dallas, 665 S.W.2d at
453.

 The evidence is such that reasonable minds could have reached the same conclusion
as the Commission. Because there is substantial evidence to support the Commission's decision, 
we overrule Entergy's third issue.


The Cost-Reconciliation Study

 By its fourth issue, Entergy argues that the Commission erred by making arbitrary,
after-the-fact changes to the standards governing its prudence analysis. Specifically, Entergy argues
that the Commission ruled in an earlier decision that a cost-reconciliation study was not a necessary
element of a prima facie case; therefore, Entergy did not oppose the Commission's decision not to
accept the cost-reconciliation study as evidence in Docket 17899. (12) The Commission's order
indicates that Entergy failed to "present any credible reconciliation of plant costs with specific
causes," which Entergy insists it could have offered in its cost-reconciliation study. The
Commission rejoins that Entergy "knew that the parties were demanding proof to reconcile Entergy's
cost overruns to its definitive estimate . . . [y]et the record shows that [Entergy] refused to provide
such evidence."

 The Commission's findings of fact and conclusions of law clearly indicate that
Entergy did not meet its burden of proof or make a prima facie case as to the prudence of the $1.453
billion. Moreover, the Commission's order finds that "[t]he record . . . is fully developed." Entergy,
before the decision in Docket 17899, supported the Commission's decision not to take additional
evidence and did not submit its cost-reconciliation study. Moreover, Entergy had been afforded
earlier opportunities to submit additional evidence to the Commission, but declined to do so. 
Entergy's argument that a later Commission decision rendered the cost-reconciliation study
unnecessary obscures the fact that Entergy had ample opportunity to fully develop the record. The
fact remains that Entergy, after a review of the entire record, did not meet the required burden of
proof. We overrule Entergy's fourth issue.


"Flow Through" Adjustments

 By its fifth issue, Entergy posits that the Commission erred by making certain rate
adjustments that were the product of its erroneous treatment of the plant investment and that a
decision of this Court to order the Commission to determine again the prudence of River Bend's cost
would necessarily require a recalculation of these "flow through" costs. Specifically, Entergy argues
that the erroneous rate adjustments include Entergy's payments to repurchase River Bend from its
project partner, Cajun Electric Power Cooperative ("Cajun"), and that the Commission denied
recovery of Entergy's payments to Cajun in proportion to the amount of River Bend investment to
which it denied recovery. Additionally, Entergy argues that the level of recovery of River Bend
deferred costs, a capital investment item, is limited by and tied to the amount of River Bend
recovery. Because we affirm the Commission's decision that any costs above the adjusted DCE were
imprudent, a recalculation of the "flow through" costs is unnecessary. We overrule Entergy's fifth
issue.


CONCLUSION


 We affirm the district court's judgment affirming the Commission's decision
excluding the additional $1.453 billion from Entergy's rate base.



 __________________________________________

 Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Puryear

Affirmed

Filed: July 11, 2003

1. Entergy Gulf States, Inc. was known as Gulf States Utilities at the time this controversy 
arose in 1986 and in several of the succeeding years of this litigation. Entergy Gulf States came into
being after Gulf States's 1993 merger with Entergy Corporation, a public utility holding company. 
We will refer to appellant as Entergy throughout the dispute's entire history.
2. DCE is the 1979 estimate of River Bend's total cost of construction. The standard of
prudence, as defined by the Commission, is:


[T]he exercise of that judgment and the choosing of one of that select range of
options which a reasonable utility manager would exercise or choose in the same
or similar circumstances given the information or alternatives available at the
point in time such judgment is exercised or option is chosen.
3. Chairman Pat Wood disagreed with the majority, concluding that $103 million of the $348
million in additional regulatory expenses was not disputed by either party and, therefore, should be
allowed.
4. In Gulf States Utilities Co. v. Public Utility Commission, the supreme court also stated that
"one simply cannot read the record of proceedings in the PUC and the PUC's order and conclude
that the Commission would have excluded the $1.453 billion from [Entergy's] rate base had it
known that it could not defer ruling on the issue." 947 S.W.2d 887, 891 (Tex. 1997). However, we
do not believe that this language comments on the weight of the evidence, but rather disapproves of
the Commission's procedure in deferring its decision on whether to include the $1.453 billion in the
rate base.
5. The Commission's brief explains the reason behind the utility's prima facie case
requirement:


The Commission's prima facie procedure is Commission-made. It is not
established by statute or prior court decision, it was specially crafted by the
Commission to aid in the trial of utility prudence reviews. It is a tool to assist in
conducting efficient hearings. It is crafted to accommodate the voluminous,
highly technical evidence required to establish the prudence of investment in
electric power plants. The Commission's prima facie procedure allows the utility
to establish the prudence by introducing evidence that is comprehensive, but
short of proof of the prudence of every bolt, washer, pipe hanger, cable tray, I-beam, or concrete pour.


(Citations omitted.)
6. In his dissenting statement, Chairman Wood wrote: "While the bulk of the additional costs
[Entergy] sought were not shown by the threshold evidentiary level to be prudently incurred, some
amounts were."
7. The IEF program reflected all changes to the original DCE and provided traceability for
the reasons cited for the project changes.
8. Commenting on the Pickard, Lowe and Garrick ("PLG") report, the Commission stated:


The [report] summarized the results of the IEF and was the "centerpiece of
[Entergy's] case on the prudence and efficiency of the construction of River
Bend." On this point, the Commission does not question that [Entergy] spent
$1.453 billion in excess of its share of the adjusted DCE, and that those costs are
reflected through the IEF process. Cost tracking an monitoring programs,
however, do not support a finding that such costs were prudently incurred--they
simply track cost changes and indicate that someone in [Entergy] approved these
changes. More is required of [Entergy] to meet its burden of proof. 
9. AFUDC is a fixed percentage determined by the Federal Energy Regulatory Commission
that compensates a utility for carrying the costs of construction. Cities for Fair Util. Rates v. Public
Util. Comm'n, 924 S.W.2d 933, 935-36 (Tex. 1996). Once the utility plant is operational, AFUDC
is shifted to the utility's rate base, and the utility begins to earn a return on its investment. Id. at 936.
10. The PLG report described "Three Mile Island backfits" as required because of the 1979
accident at the Three Mile Island nuclear plant in Pennsylvania. The requirements included
additional plant-monitoring instrumentation and control-room modifications.
11. "Sunken costs" are "cost[s] that [have] already been incurred and that cannot be
recovered." Black's Law Dictionary 350 (7th ed. 1999).
12. Entergy directs this Court to the Commission's decision in Application of Texas Utilities
Electric Co. for Authority to Change Rates to support its argument that the cost-reconciliation study
was not required; the Commission responds that Entergy's action is factually distinguishable. See
Tex. Pub. Util. Comm'n, Application of Tex. Utils. Elec. Co. for Authority to Change Rates, Docket
No. 9300, 17 Tex. P.U.C. Bull. 2057 (September 27, 1991).